## SHELBY COUNTY V. J. J. E. GIBSON.

Delivered January 5, 1898.

**1. Building Contract with County.**

A county contractor can not avoid the effect of provision of the contract requiring him to reinstate work damaged by the inclemency of the weather because he protested to the county commissioners against the performance of the work at the season of the year in which it was done, on account of its liability to be damaged by the weather, and they insisted upon his performing the work at that time, and stated that if he did not they would have the work done and charge him with the cost thereof under another provision of the contract giving them such right whenever they were led to believe by reason of any act upon his part the erection or completion of the building should be unnecessarily retarded, notwithstanding that the building could have been completed within the time stipulated if the work had been postponed, where there was no bad faith or corruptness on the part of the commissioners in insisting upon the performance of the work at the time.

**2. County—Constitutional Law—Extra Compensation.**

The provision of article 3, section 53, of the Constitution, that the Legislature shall have no power to authorize any county to grant any extra compensation to a public contractor after the contract has been entered into and performed in whole or in part, precludes the county commissioners from binding the county by an agreement to compensate the contractor for the expense of replacing damaged work which, under the contract, he was required to replace at his own expense.

APPEAL from Shelby: Tried below before HON. TOM C. DAVIS.

*F. P. Brewer* and *I. O. B. Richardson,* for appellant.

*Hugh B. Short* and *R. S. Bryarly,* for appellee.

JAMES, CHIEF JUSTICE.—This was an action by J. J. E. Gibson to recover of the county $2738 and interest thereon from August 1, 1895, for certain work done in the erection of a courthouse for said county.

Appellee had contracted on April 8, 1884, with the county to erect a courthouse at Center, according to certain plans and specifications, etc., at his own expense, and to complete same in good, workmanlike manner to the perfect satisfaction and approbation of the superintendent, the

county judge being designated as superintendent. The contract pro-
vided that if in connection with what was intended to be done, matters
appeared that were not fully detailed or explained the contractor should
apply to the superintendent for further details and orders, and that the
superintendent was at liberty to deviate from or alter the plan, form,
construction, detail and execution described in the drawings and specifi-
cations, and in case of any difference in the expense an addition to or
abatement from the contract price should be made and determined by
the architect, and such matter reduced to writing and signed by the
superintendent and contractor at the time, in order to be allowed to
work a change in the original plan. Further, that the superintendent
had power to reject the whole or any portion of the material and work
which may not in his opinion be in strict compliance with the contract,
and that if the county (commissioners) or the superintendent shall be
led to believe, by reason of any act of plaintiff, that the erection or com-
pletion of said building is retarded unnecessarily they or either of them
may, as often as the same appears to them necessary, furnish such work
and material as they may deem necessary to facilitate the completion
of the building, the cost and expense thereof to be borne by and
chargeable to the contractor. That in case of frost or inclemency of
weather, the contractor should effectually cover, protect and secure the
several works as occasion may require, and prevent admission of wet
through the apertures, and all damages occasioned thereby or otherwise
during the progress of the work or by fire, should be borne and reinstated
by and at the expense of the contractor. The building was to be finished
by August 1, 1885, barring such allowances of time as agreed on for
alteration, and there was provision for a forfeit of fifty dollars for every
day's delay after such time. It is believed that the terms of the con-
tract need not be further given.

It appears that the contractor performed the work and completed
same in all things as required by the contract, except so far as appears
from the following facts, upon which the controversy rests:

In the latter part of October, 1884, he had completed the main walls
of the building up to the second story, and being fearful of the effect of
a freeze on the mortar during the winter, by which the freshly con-
structed brick work would be seriously impaired, he had the county
judge to convene the commissioners, and informed them that a freeze
would have the above effect on the brick work, and proposed to them
that he suspend the bricklaying until spring, representing to them that
he could so suspend and yet complete his contract by the time it specified,
which from the findings of fact seems to have been the conclusion of
the trial court. The commissioners, however, concluded that this course
would involve unreasonable delay, and gave the contractor to understand
that if he did not proceed with the brick work the commissioners court
would exercise its right, as provided in the contract, to take charge of
and proceed with the construction of the brick work. Thereupon, and
because of such declaration of the commissioners and against his protest,

the contractor proceeded with the brick work, when in the latter part of December a spell of wet and freezing weather set in, and all the brick work that was fresh was materially injured thereby, so that it had to be torn down and reconstructed. That after this, plaintiff called the attention of the superintendent to the injured work and explained the necessity of tearing down and rebuilding same, which he admitted, as well as that the fault was with the county in requiring the work to proceed; and the commissioners as a court examined into the necessity of tearing down and replacing the damaged work and decided that the plaintiff should do so, agreeing that he should be paid the reasonable price for such work, but this proceeding, though the act of the court while in session, was not entered upon or referred to in the minutes. Plaintiff thereupon tore off the brick work so far as damaged, and rebuilt it, and the amount now sued for constitutes the actual cost thereof. The claim had been rejected by the commissioners upon the belief that the Constitution forbids its payment. The petition was filed January 4, 1896. The county refrained from pleading the statute of limitations.

*Opinion.*—Article 3. section 53, of the Constitution of this State, declares that the Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation fee or allowance to a public officer, servant, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part. This is a denial to counties of power to pay to a contractor a greater sum than that contracted to be paid him for work after it has been commenced. As the facts show, this contractor had partly performed his contract, and had partly constructed the brick work, when he in the first instance proceeded to carry the brick work above the second story. After it was built up to a certain extent, this work proved to be useless and insufficient, by reason of agencies that he had contracted to take the risk of. This being so, he was required under the contract to remedy it at his own expense, and he should be held, unless the action of the commissioners in reference to the matter had the effect of so changing the relations of the parties as to throw that burden upon the county.

The first act of the commissioners which is appealed to in behalf of plaintiff is their giving him to understand that if he undertook to suspend the brick work, as he desired to do, they would resort to the power given them in the contract to proceed with and do this work. As plaintiff proposed to proceed with the other work, it would seem that the county could not properly, under such provision of the contract in any event, do more than proceed with the brick work. There is no principle better established than that the courts will not make contracts for parties, and will enforce them as they are made, and in this instance the plaintiff gave the commissioners the right, whenever they were led to believe, by reason of any act or deed of his, that the erection or completion of the building was unnecessarily retarded, to furnish the work

and material they deemed necessary to facilitate the work and charge the cost thereof to the contractor.

This was an extraordinary right to confer on the other contracting party, but, having so contracted, and having made his discretion and carrying on the work subject thereto, he has no reason to complain of its exercise in good faith by the commissioners. There is no finding by the trial court that the determination on the part of the commissioners to carry on this part of the work was an act of bad faith or capricious, and there is no such evidence, nor any such issue made. In fact, the plaintiff alleged that they were led to believe, and did believe, that the building would thereby have been unnecessarily retarded. The case stands thus: Plaintiff could have postponed this brick work until spring and avoided the risk, and yet have finished the building in time. This being so, he unquestionably had the right to proceed in this manner. If, however, the commissioners were of opinion that the cessation of the brick work would cause unnecessary delay, and had proceeded with the work, and their work was rendered unfit by the freeze, certainly plaintiff could not have been charged with the cost of replacing it. If, however, the commissioners were of opinion that such cessation of the brick work would cause unnecessary delay, they were given the right to take that work out of the contractor's hands and have it done themselves. If the contractor had pursued his own course, and the commissioners had taken charge of the brick work and gone ahead with it, and the same had been ruined by a freeze while so in their hands, we do not believe the county could have insisted on the contractor replacing it at his own expense. He would have been bound for the actual cost thereof, and the county would have had to be satisfied with the wall it had itself constructed, and if it desired it rebuilt this would have been at its expense. The contractor would either have gone on with the wall as it stood, or, if the commissioners ordered it torn down and rebuilt, he would have been entitled to be paid therefor. But what did he do? He goes ahead with the work to avoid the interference of the commissioners, knowing the risk and expecting the work to be ruined. It is remarkable, if he could have postponed the brick work until spring, and nevertheless finished the building in due time, that he should have applied to the commissioners for their assent to the postponement. It would seem that it occurred to him that if he undertook to so postpone it, they would probably resort to the said provision of the contract. He is then placed in the position of seeking to have the commissioners waive the exercise of a right they had under the contract, but this they refused to do, and he thereupon proceeded with the brick work. We can not see that he occupies any different position than if he had never consulted the commissioners on the subject, but was proceeding in his own way to construct the building. He was not coerced into carrying on the brick work. The proposed exercise of a right or power conferred upon the commissioners by the contract was not coercion. He simply concluded, when the commissioners gave him to understand that they would go on

with this work, in the manner provided by the contract, if he did not, to proceed with it, thereby indicating his preference to do the work himself with the attendant risks than to have it done by the commissioners and he be relieved of the risks. Therefore, we conclude that he was responsible for the accident under the clause in the contract providing that damages occurring to the work while in progress from any cause should be borne and reinstated by and at the expense of the contractor, and that he was obligated by his contract to tear down and reconstruct so much of the wall as was thus rendered defective.

The other act of the commissioners upon which he bases his right to recover is the requirement by the commissioners of the tearing down of this defective brick work and in this connection agreeing to pay him the reasonable price of such work. We pretermit the question whether or not this agreement was obligatory on the county, for the reason that it was not noted upon the minutes, or whether or not it was such a matter as under the terms of the contract should have been at the time reduced to writing. We are of opinion that such payment in addition to the contract price for this work constituted, under the circumstances, a granting of extra compensation, within the inhibition of said section of the Constitution.

Therefore, we conclude that the judgment should be reversed, and here rendered in favor of the appellant.

*Reversed and rendered.*

Writ of error refused.