

# The Attorney General of Texas

November 29, 1979

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Dwight Brannon
Criminal District Attorney
Upshur County Courthouse
Gilmer, Texas 75644

Opinion No. MW-91

Re: Authority of city to enter into contract without competitive bidding to provide contractor a percentage of water fees in exchange for materials for water and sewer system.

Dear Mr. Brannon:

You ask whether a particular contract was legally entered into by the City of Gilmer even though it was not awarded on competitive bids. You inform us that in 1962 the city annexed the Patterson subdivision and at the same time entered into a contract with Mr. Patterson whereby he agreed to furnish all water and sewer pipe including connections, fittings and fire hydrants in the addition. In exchange, the city agreed to install the water and sewer lines and to pay Mr. Patterson half the money collected from the sale of water and sewer facilities in the addition until he recovered his actual costs. If he did not recover his costs in five years, the city would not be obligated to pay him the balance. In 1965, Mr. Patterson was given a five year period to receive revenues on extensions as well as the original lines. A contract similar to the 1962 contract was entered into in 1970 for street paving and the development of newly annexed property. Additional work was done in 1974 on the same basis as in the past, and the city council in 1977 amended the minutes to reflect this agreement. No competitive bids were taken for the original contract or any renewal thereof, and the amount to be paid under it exceeded $3,000.

You have provided us with a copy of the 1962 contract. Article 2368a, V.T.C.S., provides in part:

> Sec. 2. ... no city in this state shall hereafter make any contract calling for or requiring the expenditure of payment of Three Thousand Dollars ($3,000.00) or more out of any fund or funds of any city or county or subdivision of any county creating or imposing an obligation or liability of any nature of character upon such county or any subdivision of such

county, or upon such city, without first submitting such proposed contract to competitive bids. . . .

. . . .

Any and all such contracts or agreements hereafter made by any county or city in this state, without complying with the terms of this Section, shall be void and shall not be enforceable in any court of this state and the performance of same and the payment of any money thereunder may be enjoined by any property taxpaying citizen of such county or city. . . .

. . . .

Sec. 11. Nothing herein shall be so construed as to preclude any city or town in this State, whether organized under General or Special Law or operating under Special Charter, from encumbering or mortgaging its light system, water system, sewer system or any other utility, either, both or all, and the franchise and the income thereof and everything pertaining thereto acquired or to be acquired, to secure the payment of funds to purchase same or to make or purchase extensions, additions, or improvements thereto, as contemplated in Articles 1111 to 1118, both inclusive, of the Revised Civil Statutes of Texas, 1925, with amendments thereto, . . . provided that in making such contracts or agreements or encumbrances and in issuing revenue bonds, warrants or other obligations to be paid out of the property and income from such system or systems, the governing body of such city or town shall comply with the provisions of this Act in regard to notice and competitive bids and the right to a referendum of such question.

This contract called for an expenditure large enough to subject it to the competitive bidding requirements of article 2368a. When the contract was entered into, article 2368a applied to expenditures in excess of $2,000. See Acts 1949, 51st Leg., ch. 560, § 1 at 1098. Even though the contract did not state a dollar value for the materials to be delivered, it covered a fixed amount of work from which the value of the contract could have been determined. This contract therefore was not within the judicial exception for contracts for the delivery of materials which can be terminated at any time. Jackson v. Noel, 37 S.W.2d 787 (Tex. Civ. App. — Amarillo 1931, writ dism'd); Attorney General Opinion No. V-506 (1948). See Annot., 53 A.L.R.2d 498, 506 (1957). Although whether or not the contractor would actually receive $2,000 depended on water and sewer revenues after the contract date, we believe this amount was also subject to estimate.

We believe this contract encumbers the water and sewer system in order to pay for extensions of it. See State ex rel. Grimes County Taxpayers Association v. Texas Municipal Power Agency, 565 S.W.2d 258 (Tex. Civ. App. — Houston [1st Dist.] 1978, no

writ) (an encumbrance on revenues of a system is an encumbrance on the system). The contract is therefore subject to section 11 of article 2368a, V.T.C.S.  See also V.T.C.S. arts. 1111 – 1118.  Fisher v. City of Bartlett, 76 S.W.2d 535 (Tex. Civ. App. — Austin 1934, writ dism'd), dealt with a taxpayer's claim that a contract for a municipal electric light plant entered into pursuant to articles 1111 through 1118 was void because the competitive bidding provisions of article 2368a were not complied with.  The court determined that article 2368a conferred no right upon a taxpayer to enjoin the contract encumbering revenues. It stated that article 2368a, section 2  was limited to contracts for public works which constitute a charge on tax revenues.  Thus, the only provisions of article 2368a applicable to contracts encumbering water and sewer systems as a means of financing them are those specifically mentioned in section 11, the provisions for notice, competitive bids and the right to a referendum.  In our opinion, the contract for delivery of materials was subject to the competitive bidding provisions of article 2368a.

Although this contract should have been put out to competitive bids, the provider of materials may be able to recover his costs on a quantum meruit theory.  See Wyatt Metal & Boiler Works v. Fannin County, 111 S.W.2d 787 (Tex. Civ. App. — Texarkana 1937, writ dism'd); Attorney General Opinion H–482 (1974); see also City of Nederland v. Callihan, 299 S.W.2d 380 (Tex. Civ. App. — Beaumont 1957, writ ref'd n.r.e.); Attorney General Opinion C–128 (1963).

You also suggest that the contract may violate article III, section 52 of the Texas Constitution which provides as follows:

> The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever. . . .

Cities are not required to reimburse the developer for the cost of water main and sewer system extensions.  Crownhill Homes, Inc. v. City of San Antonio, 433 S.W.2d 448 (Tex. Civ. App. — Corpus Christi 1978, writ ref'd n.r.e.).  However, such facilities serve a governmental purpose. Id. See State v. City of Austin, 331 S.W.2d 737 (Tex. 1960). The initial contract did not, in our opinion, violate article III, section 52. Nor can we see any basis for concluding that the 1970 and 1974 contracts violated this provision.  In our opinion, however, there is some question as to whether the 1965 renewal of the 1962 contract was consistent with article III, section 53 of the constitution which provides:

> The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part. . . .

See State v. Haldeman, 163 S.W. 1020 (Tex. Civ. App. — Austin 1913, writ ref'd); Shelby County v. Gibson, 44 S.W. 302 (Tex. Civ. App. 1898, writ ref'd).  The renewal must have

been supported by new consideration in order to comply with article III, section 53.  In 1965 the term of the initial contract was extended for three years.  Apparently additional work was done on extensions of the sewer lines which could provide consideration for the lengthening of the initial contract term.  Although there remains the question of whether the installation of extensions to water and sewer mains provided adequate consideration for the renewal of the initial contract and for the receipt of revenues on the extensions, the question is for the determination of the city council in the first instance.

You finally ask whether the city has a civil or criminal liability to the taxpayers of the city.  A city official acting within the scope of his public duties is not personally liable for negligence or mismanagement.  Dallas County Flood Control District v. Fowler, 280 S.W.2d 336 (Tex. Civ. App. — Waco 1955, writ ref'd n.r.e.); Ross v. Gonzales, 29 S.W.2d 437 (Tex. Civ. App. — San Antonio 1930, writ dism'd w.o.j.).  Article 2368a, V.T.C.S., does not provide criminal penalties for failure to comply with its competitive bidding provisions, nor do we find any other provision imposing a criminal penalty on council members who neglect to follow the competitive bidding laws.  However, if a public servant intentionally or knowingly violates the competitive bidding laws with intent to benefit himself, his act may be official misconduct within section 39.01 of the Penal Code.

## SUMMARY

A contract to provide a city with materials for water and sewer systems in exchange for a percentage of water revenues is subject to the competitive bidding provisions of article 2368a, V.T.C.S. Although the contract was entered into without complying with the competitive bidding laws, the contractor may be able to recover his costs on a quantum meruit theory.  City council members would not have civil or criminal liability for negligent failure to follow competitive bidding laws.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Susan Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Jim Allison
David B. Brooks
Walter Davis
Susan Garrison
Rick Gilpin
William G Reid
Bruce Youngblood