No. 6617.

## THE STATE OF TEXAS *v.* WILLIAM WILSON.

1. DEPRECIATED STATE WARRANTS.—The holder of a warrant drawn by the Comptroller of the State upon its Treasurer, who sells his warrant at a discount because of a want of funds to meet it, can not hold the State liable for the loss he thereby sustains.
2. CONTRACT WITH THE STATE FOR MONEY.—The delivery of warrants to a contractor in payment upon his contract is not payment in a depreciated currency when there is no money in the treasury to meet such warrant. The State's contract, even for money, was to cause warrants to be issued by its Comptroller and paid by its Treasurer. The delivery of warrants is not in payment, but as evidence of the indebtedness and authority to the Treasurer to make the payment.
3. CASES DISCUSSED.—Tyers v. U. S., 5 Ct. of Cl. Rep., 509; Walkup v. Houston, 65 N. C., 50; Foster v. Coleman, 10 Cal., 276.
4. TREASURY WARRANT is but a promise to pay in legal effect, and a holder of such promise, after discounting it, would have no further claim upon the maker.
5. EXECUTIVE POWER.—Nor would the sanction of the Governor to such discounting, with promise to make up the loss, have any effect upon the liability of the State.
6. CONSTITUTIONAL INHIBITION.—Besides the section 44, article 3, of the Constitution prohibits the appropriation of money upon a claim not provided for by a pre-existing law, which applies to the claim urged in this suit.

APPEAL from Travis. Tried below before Hon. A. S. Walker.

Appellee Wilson, as assignee of Kanmacher & Dennig, by authority of chap. 7, p. 8, Special Laws of Texas, 1887, instituted suit against the State to recover an amount claimed to be due his said assignors by the State on a contract for building the East Texas penitentiary at Rusk.

The petition sets out the special act permitting suit. It sets out the contract between Kanmacher & Dennig and the State for the construction of the Rusk penitentiary, whereby it is alleged that the State, by its Commissioners, "agrees and promises" that the State of Texas shall and will pay to "Kanmacher & Dennig one hundred and forty-two thousand seven hundred and ninety-three dollars." "To be paid by the Treas-

urer of the State of Texas upon the warrants drawn on him by the Comptroller of the State of Texas, which warrants are to be drawn on the report of the Inspector or Board of Inspectors, made to the Governor of the State of Texas, and upon approval by the Governor of said inspection reports, payments to be made as aforesaid monthly on estimates and reports of the inspectors * * upon work actually done." That the payments were to be made in cash money. That Kanmacher & Dennig performed their contract, but the State failed to pay in this: That the warrants were drawn on an empty treasury and money payment of installments refused. That Kanmacher & Dennig protested, but were forced to receive the warrants.

The State, through its executive officers, threatened suit on their bond unless the contractors prosecuted their work, and so forced them, over their expostulations and protests, to take warrants and go forward with the work, which they could only do by selling the warrants at the market price, which was at great discount and loss, the State refusing to issue warrants at the discount value thereof. Allegations follow that the warrants could only be cashed at a discount of over eight thousand dollars, and that by reason of the magnitude of the work contractors could only proceed by cashing warrants, and that they were forced to proceed or forfeit their bond, or at least be proceeded against on the bond. That the Governor told them to so discount said warrants and the State would make good the discount. Appellee being on the bond and having induced others to go thereon, and bound morally, if not legally, to see them harmless, advanced largely to the said contractors, and to indemnify him for some fifteen thousand dollars so advanced, they could only assign him their claim on account of the State's failure to pay in money and so he became the owner thereof. The amount claimed was eight thousand seven hundred and sixty-five dollars.

The State filed general demurrers and special exceptions to the petition and amended petitions, which, being overruled, answer to the merits was made. The case was tried without a jury. Judgment for plaintiff for seven thousand four hundred and ninety dollars and thirty-one cents, it appearing that of the same items of loss claimed by discounting the warrants, that one thousand two hundred and seventy-four dollars and seventy-four cents were improperly claimed, the warrants hav-

ing been paid before the date of their alleged discount. The Attorney General excepted to the several rulings of the court and to the judgment. The State appealed.

*James S. Hogg*, for appellant: The court erred in not sustaining defendant's special exception to the plaintiff's original petition, for the reason that said petition shows the sale of the original warrants received from the State by his assignors, which transfer also conveyed all the rights, if any, incident thereto, including interest and all the damages that may have been occasioned by a failure to promptly pay them when due.

1. In the absence of an agreement, interest follows the principal as a legal incident; and the transfer of the principal debt carries with it the interest also.

2. Where there is no agreement to pay interest, it is only recoverable upon a breach to pay the principal as an incident thereto; and the payment of the principal debt in full extinguishes the interest.

3. When Wilson's assignors sold their warrants they parted with the principal claims and all the incidents thereto; and when the State paid them the only claim for damages flowing from previous non payment became extinguished.

The contractors agreed to do the work for "the gross sum * * * to be paid by the Treasurer * * * upon warrants drawn on him by the Comptroller * * * which warrants are to be drawn on the report of the inspector * * * made to the Governor * * * and upon approval by the Governor of said inspection reports, payments to be made as aforesaid, monthly on estimates and reports * * * upon work actually done. The State * * * reserves five per cent out of the amount of each and every one of said amounts of monthly estimates until said work is finally completed," etc.

Warrants were received and sold at a discount.

"The State of Texas eventually paid all warrants * * * but payment was made long after said contractors were, under the law of necessity, compelled to part with them."

Payment of principal extinguishes interest. (S. C. Railway Company v. Town of Morovin, 61 Barb., N. Y., 180, 189.)

Interest a mere incident of the debt. (13 Wend., 639; 11 Paige, 142.

2. The court erred in overruling defendant's special excep-

tion to plaintiff's petition, for the reason that said petition seeks to recover more than the legal rate of interest on the amount due from the date of the alleged breach of contract until the time when the principal was paid by the State.

1. As a general rule, in cases growing out of the non-performance of contracts, where there is no element of fraud, wilful negligence or malice, the measure of damages is the direct pecuniary loss suffered by the injured party; and such damages are limited to and must be the natural and proximate consequences of the act complained of.

2. On the failure to pay cash agreeably to the terms of a contract, the measure of damages is the unpaid principal due and the interest agreed to, or, if there is no agreement as to interest, then the legal rate of interest, together with the costs of suit in collecting it; for these are the natural and proximate consequences flowing from the breach. (O'Conner v. Van Homme, Dallam, 430; Smith v. Sherwood, 2 Texas, 464; 5 Texas, 148; 16 Texas, 382; Gordon v. Jones, 27 Texas, 622.)

Damages limited to natural and proximate consequences. (Brandon v. Manufacturing Company, 51 Texas, 121; also 13 Texas,324; 25 Texas Sup., 188; Sedgwick on Damages, 82, et seq.)

Unpaid principal and interest measure of damages. (2 Texas, 461; 2 Sedgwick on Damages, 159.)

3. The court erred in not sustaining defendant's special exception number six to plaintiff's original petition, for the reason that said petition attempts to show that the State is liable either for interest or damages on the facts alleged to be true.

1. The State is not liable for interest in any case unless by express agreement she makes herself so.

2. There must first be a law authorizing it before she can be bound for interest by the contract of her officers.

3. The State can not commit a wrong or inflict an injury out of which damage can flow or for which it can be recovered.

The law authorizing the construction of the penitentiary empowered "commissioners" to contract for the State, and it nowhere gave them or the Governor the right to bind her for interest or commit her to damages. (Acts 1875, p. 28.) Nor is it alleged or shown that they so contracted.

State not liable for interest. (State v. Thompson, 5 Eng., Ark., 61.)

Officers can not bind State to pay interest.   (15 Texas, 73, 74.)

4.   The court erred in not sustaining defendant's special exception to plaintiff's trial amendment, for the reason that it and the original petition each show that the contract, for the alleged breach of which the damages claimed arose, covered a period and continued for more than two years, and fail to allege that any appropriation of money to comply with it was ever made by the Legislature within said time out of which the warrants or the deficiency thereon could have been lawfully paid.

No money shall be drawn from the treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years, except by the first Legislature to assemble under this Constitution, which may make the necessary appropriations to carry on the government until the assemblage of the Sixteenth Legislature.   (Constitution 1876, art. 8, sec. 6.)

5.   The court erred in not sustaining defendant's ninth special exception to plaintiff's trial amendment, for the reason that it seeks to bind the State by the then Governor's verbal declarations, orders and admissions, without showing that he was authorized to make them, or that he in any way acted thereon officially as Governor, and when as a matter of law he had no right to make the original contract or to change its terms or bind the State to the payment of deficiencies accruing in the payment of treasury warrants.

The commissioners, by the approval of the Governor, were alone authorized to act for the State in making the contract, and neither of them could change its terms by verbal agreement or written order.

6.   The court erred in rendering judgment against the State upon the facts, for the reasons:

1.   That they show that the said treasury warrants were paid as fast as the money was collected and paid into the treasury under and by virtue of the appropriation and in pursuance of the laws governing taxation and revenue.

2.   That each and every warrant was paid to the agents of said contractors according to their face value.

3.   That the warrants were never, in fact or in law, sold or negotiated; but were held, discounted and collected by the contractor's agents—the banks of Raymond & Co., Forster & Co. and Forster, Ludlow & Co.; which facts deprive the plaintiff of any right to the discount claimed; his recourse being not

upon the State but against the said agents to recover the amounts they made by their unlawful and fraudulent speculation out of said warrants so held as trust funds.

4. That by the terms of the original contract the contractors agreed to take treasury warrants issued by the Comptroller on monthly estimates rendered and approved, and to collect them as the revenue therefor was paid into the treasury by due course of law.

*Walton, Hill & Walton,* for appellee: As to distinction between *ex contractu* and actions *ex delictu,* 3 Blackstone's Commentary, 117.

Remedial statutes will be construed liberally and to advance the remedy even where the meaning is doubtful. (White v. The Mary Ann, 6 Cal., 462; s. c., 65 Am. Dec., 523.) Intent of Legislature to govern in construction of statutes. (Russell v. Farquhar, 55 Texas, 360.)

2. The warrants were not made the foundation of the action and interest on them is not sued for, and they are properly treated in the petition at the instance of the State's chief officer as part payments in a commodity or in a depreciated medium of exchange, to be sold and receipts therefor applied on the State's indebtedness under the contract.

Payment of depreciated currency only satisfies debt to the extent of market value of such currency. (Walkup v. Houston, 65 N. C., 501.)

Especially where received with understanding that it is not accepted in full payment. Tyers v. United States, 5 Court of Claims, 509. (See abstract of same case, 3 Abbott's National Digest, 561, title "Payment II," sub-title "Depreciated Currency.")

3. Appellee does not object to the abstract propositions of law enunciated in appellant's propositions, but insists they are not applicable to this case under the assignment of error made. The effort of appellee in this connection was to recover the portion of the debt which he alleged had not been paid—not damages for delay or interest.

4. Appellee objects to the fifth assignment as not pointing out the error complained of. It can not be ascertained without reference to the exception number six, and it does not show upon what facts the petition bases the charge of liability for interest or damage.

If, however, this assignment is considered, we deem it sufficient opposition to the propositions made under it to say: That the petition neither complains of a tort or seeks the recovery of interest as such. If interest is or should be taken into consideration at all, in such a case and under such a petition, it would be only by analogy as a measure of recovery or damages.

5. We suggest that the exception in ninth assignment of error, if tenable, would only be applicable to such parts of the petition as is based on what became due between August 31, 1877, and January, 1879.

The State having the constitutional power to make the appropriation to cover the entire range of the contract, if, and in so far as it failed so to do, it ought, on principles of justice, to answer for its default.

The court finds that the appropriation was made.

6. The Governor, as the chief officer of the State and clothed with supervisory powers over the commissioners and contractors, had power to speak for the State in the emergency, and his request that the contractors treat the warrant as only part payment and proceed with the work, and his promise for the State that the balance should be paid, while not constituting the basis of appellee's demand, was rightly considered in connection therewith.

1. There is no dispute but that the treasurer paid warrants when the money with which to pay was at hand. The complaint was, and the finding of the court is, that: "There was not in the treasury of the State funds to take up these warrants (although appropriations were made). They were presented to the treasury and payment refused."

2. There is no controversy but that the warrants were ultimately paid, but the facts show they were not paid to Kanmacher & Dennig or any one for them, but that acting by the advice of the Governor, they sold the warrants at the market price, which realized to them seven thousand four hundred and ninety dollars and thirty-one cents less than what was due them.

3. The court finds that the warrants were sold for the market price, and appellants failed to show by the record that the finding is incorrect. The court finds one thousand two hundred and seventy-four dollars and seventy-four cents of the claimed discount was incorrect because the warrants appeared

to have been paid before the date of the alleged discount, and refused to allow such claims.

4. The court found both as matter of fact and law that by the terms of the contract Kanmacher & Dennig were to be paid money, not warrants.

The appellant did not except to the conclusions of law.

7. This claim was provided for by pre-existing law, and is therefore not subject to the constitutional inhibition relied upon.

The State, by act of its Legislature, authorized the contract for the construction of the penitentiary, leaving the price to be fixed by contract. The price and terms were so fixed. The suit is brought and judgment below rendered upon the proposition that the contractors were to be paid in money by the State's disbursing officer, the Treasurer. This was to be done on the drafts or warrants of the Comptroller. The State failed to supply the funds to meet these payments. It failed to make the payments under the contract. It delivered the depreciated warrants in part satisfaction, and with the express understanding that they were not to be taken at above market value. The difference between their market value and the accounts due on the contract is what is here sued for and recovered. The case is the same as if the commissioners and Governor had themselves carried the depreciated warrants into the market, cashed them and paid proceeds over to the contractors. Most certainly such a course would have left the deficit on the contract more clear, but the result to the State would have been the same.

The State's default placed the contractors in a position of quasi duress. Their bond compelled them, under ruinous penalties, to proceed with the work. The official agencies of the State demanded, and public interest required, that the work go forward.

The result was that, instead of paying by delivery of warrants and paying the same by the Treasurer, the State stopped its performance at the delivery of the warrants, and defaulted in their payment by the Treasurer. The payment of these warrants by the State's Treasurer was as much a part of the undertaking as the delivery of the warrants. The contract required the concurrence of the monthly delivery of the warrants and the cash payment of them by the Treasurer to constitute a satisfaction of the undertaking by the State. This simply

placed the parties in the attitude of a creditor demanding payment and a debtor tendering depreciated securities or notes in part payment. They were received as such, and not in satisfaction.

We suggest the analogy of the case where depreciated bank notes are received in payment or discount of a note. Mr. Chitty says (Chitty on Bills, 247): "It should seem that if in discounting a note or bill the promissory note of country bankers be delivered, after they have stopped payment, but unknown to the parties, the person taking, unless guilty of laches, might recover the amount of the discounter." See also Ontario Bank v. Lightbody, 13 Wendell, 103, margin p. 111; Townsend v. Bank of Racine, 7 Wisconsin, 185; Gilman v. Peck, 11 Vermont, 516; Wainwright v. Webster, Id., 576; Fogg v. Sawyer, 9 New Hampshire, 365; Maggee v. Cormack, 13 Illinois, 289; Frontier Bank v. Morse, 22 Maine, 88; Harley v. Thornton, 2 Hill (S. C.) Chancery, 509; Westfall v. Braley, 10 Ohio State, 188.

Even where there is an agreement to accept less than the debt due, unless the agreement is based on a valid consideration, the debt is not discharged. (Lanes v. Squyres, 45 Texas, 382.)

That the same principles of justice which apply to individuals apply to States in the courts, even to the extent of holding them liable for unliquidated damages for the breach of a contract, is held in the following cases: Danold v. The State, 89 New York, 36; same case, 42 American Reports, 379; State v. Farrish, 23 Mississippi, 485.

GAINES, ASSOCIATE JUSTICE. Kanmacher & Dennig entered into a contract with the State of Texas for building its penitentiary at Rusk. According to the terms of the agreement the work was to be paid for in installments as it progressed, and the payments were to be made "by the Treasurer of the State of Texas upon warrants drawn on him by the Comptroller." During the years 1877, 1878 and 1879 many warrants were issued to the contractors at times when there was no money in the treasury, and were discounted with the bankers in the city of Austin, to whom they were ultimately paid by the State. According to the finding of the court below, the contractors lost by having to discount their warrants at the market value something over seven thousand dollars. The claim for the sum so lost was transferred for value to the appellee, who by virtue of the authority of a special act of the Legislature brought

this suit to enforce its collection. (Special Laws 1887, p. 18.) It was alleged and proved that Kanmacher & Dennig were compelled to discount their warrants in order to raise money with which to complete the building and thereby comply with their contract with the State. The special act of the Legislature merely gave consent that a suit might be brought against the State in order to determine the question of its liability upon the alleged claim. The simple question is, can the holder of a warrant drawn by the Comptroller of the State upon its Treasurer, who sells his warrant at a discount because of a want of funds to meet it, hold the State legally liable for the loss he thereby sustains? We know of no authority which supports the affirmative of the question; nor have we been enabled to conceive of any principle by which the claim of appellee can be plausibly maintained. If A agrees to pay B a certain sum of money at a given time and fails to pay, the measure of B's damage is the money and interest. He can obtain a judgment for no more, although A's credit may be so impaired that the judgment when obtained is worth only fifty cents on the dollar. Suppose, however, that B holds A's written promise to pay and sells it to C at a discount, and that A pays the debt to C, what lawful demand has B upon A, however great his losses may have been in the transaction? Clearly none. Kanmacher & Dennig had no greater right against the State when their warrants were presented to the Treasurer and the Treasurer failed to pay. We are cited to no authority which sanctions the claim that they could sell their warrants at a discount and hold the State liable for the loss, and we are confident none can be found. But it is insisted that because the warrants were at a discount when issued, they are to be treated as payment in a depreciated currency and are to be credited upon the State's debt at their real and not at their face value. But such are not the legal status and effect of the transaction. The State's contract was to cause warrants to be issued by its Comptroller and paid by its Treasurer. The issue of the warrants was in accordance with the terms of the contract. They were not delivered as payments, but as evidences of debt and authority to the Treasurer to make the payments. The warrants were eventually paid to the lawful holders, and the attempt here is to make the State pay a part of a debt which it has already fully discharged.

A brief consideration of the authorities cited by appellee, will show, that they do not apply to the case before us. In

---

---

Tyers v. United States, 5 Ct. of Claims, 509, the claimant had been awarded a sum of money against the government payable in coin. The treasurer refused to pay coin, but paid in United States treasury notes, which were then depreciated. The claimant having received the currency under protest, and having authority to sue the government, brought his suit for the difference in value between the coin and currency and was held entitled to recover. In Walkup v. Houston, 65 North Carolina, 50, the holding was that credits in currency, indorsed on a note payable in specie, were to be deducted at the value of the currency estimated in specie. The other cases cited merely held that a payment in the bills of a broken bank (the party receiving them being ignorant of the failure) is no payment. (Ont. Bank v. Lightbody, 13 Wend., 111; Gilman v. Peck, 11 Vt., 516; Wainwright v. Webster, Id., 576; Fogg v. Sawyer, 9 N. H., 365; Maggee v. Cormack, 13 Ill., 289; Frontier Bank v. Morse, 22 Me., 88; Harley v. Thornton, 2 Hill's Ch., S. C., 509; Westfall v. Braley, 10 Ohio St., 188.) In this case it is not claimed that the debts were not ultimately paid in full in good money.

It is held that the board of supervisors of a county, when warrants are depreciated, has no power to issue warrants in payment of a debt for a greater amount than the debt to be discharged, in order that the creditor may receive full payment. (Foster v. Coleman, 10 Cal., 278; Shirk v. Pulaski Co., 4 Dill., 207; Goym v. Ashley Co., 31 Ark., 552; Bauer v. Franklin Co., 10 Mo., 305.) The same rule applies to municipal corporations proper (Clark v. DesMoines, 19 Iowa, 199), and is also clearly applicable to the obligations of the State.

The case last cited holds that the warrant of a municipal corporation upon its treasury is in legal effect a promissory note, and the State's warrants in this case can be held to be no more. The payee, who receives and discounts them, has no claim against the State for the loss any more than a holder of a promissory note, who had discounted it after maturity, would have against the maker to recover the discount. The contractors in this case have suffered a misfortune in common with numerous other creditors of the State, who during the years of a depleted treasury, were forced to place their warrants upon the market and sell them at the best price that could be obtained. Is the State of Texas resting under an obligation to make good to all its officers, agents and contractors, who have

received and discounted its warrants the loss of which they have thereby sustained? There may be some moral obligation in the premises, but there is no legal one. Its warrants having been paid, its legal liability no longer exists.

There is testimony to the effect that the Governor of the State, at the time of the transaction in question, told the contractors to discount the warrants and to look to the State for the difference. But it is too clear for argument that he had no power to bind the State in such a manner. The payment of this claim is prohibited by section 44 of article 3 of the Constitution, which provides that the Legislature shall not "grant by appropriation or otherwise any money out of the treasury of the State to any individual on a claim, real or pretended, when the same shall not have been provided for by the pre-existing law."

It follows that we are of opinion that the judgment should be reversed and here rendered for the appellant, and it is so ordered.

*Reversed and rendered.*

Opinion delivered June 29, 1888.

[Associate Justice Walker not sitting.]