STATE OF TEXAS V. RAGLAND CLINIC-HOSPITAL.

No. 7923. Decided February 11, 1942.
Rehearing overruled March 4, 1942.
(159 S. W., 2d Series, 105.)

Gerald C. Mann, Attorney General, Wm. J. Fanning, Fred C. Chandler, and George W. Barcus, Assistants Attorney General, for plaintiff in error.

Mat Davis, Otis T. Dunagan, both of Gilmer, for defendant in error.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This case involves the power of an agent of the Texas Liquor Control Board to bind the State on a contract for medical treatment and hospital services supplied to a prisoner injured by such agent when resisting arrest.

The facts are undisputed. On November 12, 1936, Y. L. Culp, an agent and inspector of the Texas Liquor Control Board, together with certain peace officers of Morris County, made a raid on an illegal still. In the course of the raid one Ross Davis resisted arrest, and Culp shot him through the leg. Culp immediately took Davis in charge and carried him to the Ragland

Clinic-Hospital, in Upshur County, representing to the doctor in charge that Davis was a prisoner of the Texas Liquor Control Board; that he had authority to enter prisoners at hospitals for treatment; and that the Texas Liquor Control Board would pay the bill. Davis was treated and cared for in the hospital for about 100 days. The bill, amounting to $795.50, was presented to the Board; but payment was refused. The hospital obtained permission of the Legislature to sue the State, and recovered judgment for that amount in the County Court of Upshur County. The judgment was affirmed by the Court of Civil Appeals without written opinion.

Our Constitution provides that no grant of public funds shall be made to an individual out of the State Treasury, except where same is provided for by pre-existing law, and that no one shall be employed in the name of the State, unless authorized by pre-existing law. State Constitution, Art. III, Sec. 44. It is further provided that "No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; * * *." Id., Sec. 49.

■ Under these provisions it is well settled that no one has authority to make a contract binding on the State, except where he is authorized so to do by the Constitution or a pre-existing statute. Fort Worth Cavalry Club v. Sheppard, 125 Texas 339, 83 S. W. (2d) 660; Nichols v. State, 11 Texas Civ. App. 327, 32 S. W. 452 (writ refused); State v. Haldeman, 163 S. W. 1020 (writ refused); State v. Wilson, 71 Texas 291, 299, 9 S. W. 155; State v. Perlstein, 79 S. W. (2d) 143, par. 1; 59 C. J. 172.

If there is any statute in this State conferring on employees of the Texas Liquor Control Board the authority to bind the State on a contract for medical services for a prisoner, it must be found in the Act creating said Board. Pertinent parts of that Act, as it existed before the amendment of 1937, are as follows:

"Among others, the functions, powers and duties of the Board shall include the following:

"* * * * *

"(c) To investigate and aid in the prosecution of violations of this Act and other Acts relating to liquor, to make seizure of liquor manufacturer, sold, kept, imported, or transported in

contravention thereof, and apply for the confiscation thereof whenever required by the Act, and co-operate in the prosecution of offenders before any court of competent jurisdiction.

"(d) To exercise all other powers, duties, and functions conferred by this Act, and all powers incidental, convenient, or necessary to enable it to administer or carry out any of the provisions of this Act and to publish all necessary rules and regulations and mail the same to all interested parties." (Penal Code, Art. 666-6.)

"It shall be the duty of all peace officers of this State, including city, county and State, to enforce all provisions of this Act and to assist the Board in detecting violations of this Act and apprehending offenders * * *." (Penal Code, Art. 666-31.)

■ It is not contended that the above Act expressly authorized any one to make a contract that would bind the Board to pay for medical services to prisoners, but it is contended that such authority is conferred by necessary implication by the provisions of subdivision (d) of Section 6, which confers on the Board "all powers incidental, convenient, or necessary to enable it to administer * * * the Act." This contention is based on the assumption that the Act authorizes employees of the Board to make arrests for violations of the Act and that the right to make arrests carries with it the authority to contract for medical services for prisoners so arrested. However, a careful reading of the original Act will disclose that it nowhere expressly or by necessary implication confers on the Board or its employees authority to make arrests for violations of the Act. Section 31 of the Act indicates that it is contemplated that the regular city, county, and State peace officers shall perform these duties. But even if it should be held that such employees have authority to make arrests, it would not follow that they would have authority to make contracts, binding on the State, for the medical services for those so arrested. To so hold would subject the State to almost unlimited liability. For this reason the Legislature has not seen fit to vest in State employees such unrestricted authority to bind the State. Other provisions have been made for supplying the needs of prisoners. Code of Criminal Procedure, Art. 1037, provides as follows:

"Each county shall be liable for all expense incurred on account of safe keeping of prisoners confined in jail or kept under guard, except prisoners brought from another county

for safe keeping, or on habeas corpus or change of venue; in which case, the county from which the prisoner is brought shall be liable for the expense of his safe keeping."

Code of Criminal Procedure, Act. 1040, provides in part as follows:

"For the safe keeping, support and maintenance of prisoners confined in jail or under guard, the sheriff shall be allowed the following charges:

\* \* \* \* \*

"3. For necessary medical bill and reasonable extra compensation for attention to a prisoner during sickness, such an amount as the commissioners court of the county where the prisoner is confined may determine to be just and proper."

Evidently the Legislature deemed these provisions sufficient for the supplying of the necessary medical services for prisoners. Any contract for the treatment of the prisoner in question shauld have been made through the authorities designated in the statute.

We see nothing in the Texas Liquor Control Act which in anywise evidences legislative intent to authorize employees of the Liquor Control Board to make contracts such as is here under consideration.

The plaintiff's contention that it had a right to contract with the employee of the Board because he had the apparent authority to make the contract on behalf of the State is unsound. Since the powers of all State officers are fixed by law, all persons dealing with them are charged with notice of the limits of their authority and are bound at their peril to ascertain whether the contemplated contract is within the power conferred. There is no occasion or excuse in such a case for indulging in presumptions or in relying on appearances. Nichols v. State, 11 Texas Civ. App. 327, 32 S. W. (2d) 452 (writ refused) ; State v. Perlstein, 79 S. W. (2d) 143, par. 11; State v. Bank of Missouri, 45 Mo. 528; 59 C. J. 173, sec. 287; Mechem on Public Officers (1890), 555, sec. 830.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and judgment is here rendered for the defendant.

Opinion delivered February 11, 1942.

Rehearing overruled March 4, 1942.