

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**

**ATTORNEY GENERAL**

Honorable George W. Cox
State Health Officer
Texas State Board of Health
Austin, Texas

Dear Sir:

Opinion No. O-6014

Re: Legality of the Texas
State Department of
Health incurring in-
debtedness in the amount
exceeding funds actually
received by it, even though
it has assured that funds
will be allocated upon a
basis of the cost of the
completed cases.

Your letter of May 9, 1944 requesting the opinion
of this department regarding the legality of the transaction
therein mentioned is as follows:

"The Congress of the United States enacted
and the President approved on March 18, 1943, an
act providing maternity and hospital maternity
and infant care for the wives and infants of en-
listed men of certain grades in military service.
This legislation is set forth in H. R. 2935, 78th
Congress, known as the Labor-Federal Security Ap-
propriation Act, 1944. Under Title 1 the follow-
ing statement is made:

"'Grants to States for emergency maternity
and infant care (national defense): For grants
to States, including Alaska, Hawaii, Puerto Rico,
and the District of Columbia, to provide, in ad-
dition to similar services otherwise available,
medical nursing, and hospital maternity and in-
fant care for wives and infants of enlisted men
in the armed forces of the United "tates, under
allotments by the Secretary of Labor and plans
developed and administered by State Health Agen-
cies and approved by the Chief of the Children's
Bureau, $4,400,000.'

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George W. Cox, page 2

"The legislation which made provision for the Emergency Maternity and Infant Care Program requires participating States to present plans for operating the services to the United States Children's Bureau, the agency which dispenses the funds and supervises the operation of the services throughout the various States.

"Before Texas inaugurated a program for emergency maternity and infant care it requested an opinion of the Attorney General of Texas upon the legality of administering federal funds under the rules and regulations promulgated by the United States Children's Bureau. The Attorney General, in this opinion, had this to say with reference to the federal legislation governing this service:

"'The foregoing act expressly provides for such funds to be administered by State health agencies. We construe that portion of the Director's letter set out above, together with the rules promulgated by the Bureau to mean that the Texas State Health Department must only assume responsibility for the policies and aspects of administering the funds. That is, to see that the funds are paid to the proper person entitled thereto for services performed according to the adopted rules, and that the Federal Agencies do not require the Texas State Health Department to obligate the State of Texas to assume responsibility for the payment for the services rendered.'

"The State Health Officer of Texas presented a plan for inaugurating the Emergency Maternity and Infant Care Program to the United States Department of Labor, after securing Opinion No. O-5583 from the Attorney General of Texas. On December 13, 1943, the State Health Officer received a letter from the Director of the Division of Health Services, United States Children's Bureau, Washington, D. C., stating: 'This is to inform you that your Emergency Maternity and Infant Care Plan has been approved.'

"The State Department of Health immediately put the plan into operation in accordance with the Attorney

Honorable George W. Cox, page 3

General's opinion and the information supplied by the Federal Bureau.

"The United States Children's Bureau informed the Texas State Health Officer, through MCH Circular, No. 14, issued May 6, 1943, that funds for administering this program should be requested as follows:

"'2. Requests for Fund E

A. No conditional apportionments of Fund E are being made to the States for the fiscal year 1944 since the amount of monthly allotments will be based on the number of cases authorized and the cost of care per case in each State.

B. Enter on a separate budget series form MCH-3a an item number—different from any number included in the maternal and child health budget—for an item designated as "Emergency Medical and Hospital Care for Mothers and Infants" and enter in column 10 the amount of Fund E estimated to be needed for the fiscal year 1944. The heading of column 10 should be changed to read "Fund E." This form MCH-3a should be submitted along with the regular MCH budget for 1944.

C. When a State maternal and child health plan is approved for the fiscal year 1944, approval will not be given in any specified amount of Fund E.

D. MCH-8, "Quarterly Estimates of Expenditure," should not be submitted for Fund E. Instead, telegrams should be submitted to the Children's Bureau on the first day of each month including the following information:

Honorable George W. Cox, page 4

"Number of cases authorized during
_____ (previous month).

"The estimated total amount of obli-
tations incurred for such cases.

"The estimated number of applications
that will be authorized during _____
(Month in which telegram is sent).

"On the basis of the information in
these telegrams, allotments will be made
and payments of Fund E will be certified
to the States.'

"Upon a basis of instructions as contained in
MCH Information Circular, No. 14, the Texas State
Health Officer has submitted to the Children's Bureau
on the first day of each month the information requested
in this circular.

"The United States Children's Bureau has not al-
located to the Texas State Department of Health in ac-
cordance with MCH Information Circular, No. 14, as quoted
herein. It has allocated funds upon a basis of unex-
pended balances, as compared with the estimated needs for
funds during the coming month. This is evidenced by
the following communication from the Director of the Di-
vision of Health Services, United States Children's
Bureau, April 30, 1944:

"'U.S. Department of Labor        Copy for Geo.W.Cox,
CHILDREN'S BUREAU                              M.D.
                        EMIC PROGRAM

NOTICE OF ALLOTMENT OF FUND E FOR THE MONTH
ENDING APRIL 30, 1944

State of Texas          Prepared by State Audits Unit
                                      April 8,1944

|  |  | Maternity Cases | Infant Cases |
|---|---|---|---|
| 1. | Cases incomplete as of March 31, 1944 | 5,473 1/ | 304 1/ |
| 2. | Estimated new cases for April | 1,963 | 244 |
| 3. | Average cost per case completed during March | 59.91 | 6.33 |

Honorable George W. Cox, page 5

4. Estimated Fund E needed
   for April:
   (a) Item 1 multiplied by
       item 3                    $327,887.43    $1,924.32
   (b) Item 2 multiplied by
       item 3                     117,603.33     1,544.52
   (c)    Total (item4(a) plus
          4(b)                    445,490.76     3,468.84

5. Estimated Fund E needed for
   incomplete and new maternity
   and infant cases (sum of
   amounts in item 4(c) )                       448,959.60

6. Total previous allotment of
   Fund E                        646,000.00

7. Total expenditures for cases
   completed through March 31,
   1944                           15,894.71

8. Adjustment: Amount of pre-
   vious allotment available for
   cases reported in items 1 and
   2 (item 6 minus item 7)                      630,105.29

9. Allotment of Fund E needed
   for April (item 5 minus item
   8)                                        $ _2/---

   1/ ADJUSTED TO APPROXIMATELY 125 PERCENT OF NEW
      CASES AUTHORIZED IN MARCH.  IF FIGURE SHOULD BE
      INCREASED LATER IN MONTH BASES ON EXPERIENCE,
      PLEASE ADVISE AND ADDITIONAL ALLOTMENT WILL BE
      MADE.

   2/ ITEM 8 IS GREATER THAN ITEM 5.'

                                    (signed) Edwin F.
                                             Daily


     "Furthermore, the United States Children's
Bureau, through FMIC Circular, No. 8, April 3, 1944,
has informed the State Health Officer as follows:

Honorable George W. Cox, page 6

"'To obtain necessary information for determining the monthly allotment of Fund E to the States and to provide an accounting of cases for which services have been authorized by the States, and of expenditures made under such authorizations, each State participating in the EMIC program is required after approval of their encumbrance control to submit every month on Form EMIC - 8 a report of cases, allotments, and expenditures of Fund E for the month and an estimate of Fund E needed for the following month, as provided for in the regulations of the Secretary of Labor.

"'Form EMIC-8 should be submitted directly to the Children's Bureau in Washington on or before the 5th day of each month. The first report on Form EMIC-8 is due on or before the 5th day of the month following the first month in which the approved encumbrance control is in operation.

"'Monthly reports on Form EMIC-8 will replace the telegraphic reports submitted in previous months, Special Report No. 1, and Special Report No. 2. <u>Reports on Form EMIC-8 will be used in the future as a basis for computing the monthly allotments of Fund E to States on approved encumbrance control.</u>'

"According to statements of the Director of Health Services of the United States Children's Bureau as quoted herein the monthly allotments to Texas will be based upon the cost of completed cases. This will not, in the opinion of the State Health Officer, be a satisfactory basis of allocation, for the unexpended balance does not in reality represent the amount of funds available, since encumbrances have been made against the unexpended balance. This procedure, if followed, will result in the Texas State Department of Health encumbering funds in excess of the amount actually received by the Texas State Department of Health.

"Considering the above information I shall appreciate an opinion upon the legality of the Texas State Department of Health incurring indebtedness in an amount exceeding funds actually received by the Texas State Department of

Honorable George W. Cox, page 7

> Health, even though the Texas State Department of
> Health has been assured that funds will be allocated
> upon a basis of the cost of completed cases."

It is well settled that no one has authority to make a contract binding on the State, except where he is authorized so to do by the Constitution or a pre-existing statute. (Fort Worth Cavalry Club v. Sheppard, 83 S. W. (2d) 660; Nichols v. State, 32 S. W. 452; State v. Haldeman 163 S. W. 1020; State v. Wilson, 9 S. W. 155; State v. Perlstein, 79 S. W. (2d) 143; State v. Ragland Clinic-Hospital, 159 S. W. (2d) 105). After a careful search of the statutes and various provisions of the State Constitution, we fail to find any provision authorizing the Texas State Department of Health to bind the State when incurring indebtedness in amounts exceeding funds actually received from the federal authorities by the Texas State Department of Health even though the Texas State Department of Health has been assured that funds will be allocated upon a basis of the cost of completed cases as mentioned in the letter quoted above. Therefore, it is the opinion of this department that the State Department of Health has no legal authority to bind the State of Texas for any amount or sums of money under the foregoing facts. H. R. 2935, 78th Congress, known as the Labor-Federal Security Appropriation Act, 1944 expressly provides for the funds appropriated to be administered by State health agencies. It is apparent from the facts stated that federal funds will be allocated upon a basis of the cost of completed cases and that the federal authorities, in order to carry out the plans of the federal agencies, require the State Health Department to incur indebtedness in amounts exceeding funds actually on hand; however, the federal agencies assure the State Department of Health that funds will be allocated to pay the indebtedness incurred under its rules and regulations. We can see no reason why the State Health Department administering the above mentioned funds would be prohibited from incurring the indebtedness heretofore mentioned in conformity with the federal rules and regulations. Although as above stated, the State Department of Health would have no legal authority to bind the State of Texas in carrying out the program of the federal agencies under the rules and regulations of such agencies.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Ardell Williams_

Ardell Williams
Assistant

AW/JCP

APPROVE
OPINION
COMMITTE
BY _____
CHAIRMAN