**HARDIN COUNTY, Appellant,**

v.

**TRUNKLINE GAS COMPANY, Appellee.**

**No. 19592.**

United States Court of Appeals
Fifth Circuit.

April 15, 1964.

Robert L. Burns, Sears & Burns, Houston, Tex., for appellant Hardin County.

Fletcher H. Etheridge, Jack Binion, Houston, Tex., for appellee; Butler, Binion, Rice & Cook, Houston, Tex., of counsel.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

HUTCHESON, Circuit Judge.

When this case was here before,[1] the judgment of the district court was reversed and the cause remanded with directions to enter judgment for the appellant.

The Supreme Court, on October 14, 1963, 375 U.S. 8, 84 S.Ct. 49, 11 L.Ed.2d 38, on petition for writ of certiorari to this court, entered the following per curiam:

> "The petition for a writ of certiorari is granted. The judgment is vacated

---

1. Hardin County, Tex. v. Trunkline Gas Co., 311 F.2d 882.

and the case is remanded to the United States Court of Appeals for the Fifth Circuit, it appearing that the State of Texas has passed a statute in connection with controversies of this kind since the petition for a writ of certiorari was filed in this Court. This order is entered without reaching the merits."

The parties, appellant and appellee in this court, have filed additional briefs. The appellee insists that because of the new statute [2] referred to in the Supreme Court's per curiam, we should recall the mandate, set aside our former judgment of reversal, and affirm the judgment of the trial court.

The appellant, invoking constitutional provisions, Sections 44, 51, 52 and 53 of Article III of the Texas Constitution, Vernon's Ann.St., insists: that these provisions, manifesting an intent of the framers of the Constitution to severely limit and circumscribe the powers of the Legislature to enact curative statutes, in effect prohibit and prevent the ratification of the alleged contracts in this case; and that we should reaffirm our former judgment. We agree that this is so.

██ Unlike the questions argued when the case was decided before, the questions now presented are, as they were in Constantin v. Smith, 57 F.2d 227 (D.C.), constitutional questions of great moment and import, and, since these constitutional provisions, like those discussed in the case of Constantin v. Smith, were written into the Texas Constitution of 1876, at the end, and because of, an era of spoilation and abuse of power in the reconstruction period under the rule of carpetbaggers and scalawags and their henchmen and minions, these constitutional safeguards, against Legislative usurpation of power, must be given full and vigorous support and application, as they were in Constantin v. Smith, against usurpation by the Executive. Constantin v. Smith, supra, at p. 237, affirmed Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375.

██ ██ The Texas cases, in uniformly declaring and enforcing the constitutional rule applicable to curative and validating statutes, have declared that the rule is that

" * * * [W]hat the Legislature could have authorized in the first instance it can ratify, *if at the time of ratification it has the initial authority to authorize.*" Anderson County Road Dist. No. 8 v. Pollard, 116 Tex. 547, 296 S.W. 1062, (1927). (Emphasis supplied.)

Thus the contention of the appellee that the only qualification of the validity of a retroactive validating statute is that the action or contract validated by the curative statute must be one which the Legislature could have *originally* authorized, must be rejected as contrary to the established law of Texas. This being so, our original opinion in this case, that the questioned contracts of the county were unenforceable because appellant not only did not have statutory powers to make the contracts, but was prohibited by statute from so contracting, makes it clear: that the so-called validating statute is without authority in law, Texas Constitution Sec. 53, Art. III; and that any attempt to require payment of funds under such contracts constitutes an unconstitutional donation of public funds. Texas Constitution Sec. 52, Art. III.

*Section 53 provides that the Legislature shall have no power to authorize payment of any claim created against any county under any agreement and contract made without authority of law.*

*Section 52 prohibits the Legislature from authorizing any county "to grant public money or thing of value" to any individual or corporation. To construe Sec. 2 of the Act of 1963 as imposing a retroactive obligation on appellant to pay appellee's claim under the void contracts would authorize payment of a claim created under a contract made without authority of law, and thus constitute a grant of public money to a corporation.*

---

**2.** Tex.Acts, 58th Leg. Ch. 240, p. 654 (1963) (hereinafter cited as Act of 1963).

■ To be properly understood, Sections 52 and 53 must be considered with Sections 44, 51, and 55 of Article III.[3] Thus, as was the case in Sterling v. Constantin, where the constitutional limitations invoked were imposed upon the Executive, while here the invoked constitutional limitations are imposed upon the Legislative, it must be held here that all attempts by the Legislative to exercise powers claimed but not possessed is overridden by the invoked constitutional provisions. In the face thereof, it must be held that construed as an attempt to ratify the alleged contracts between appellant and appellee Sec. 2 of the Act of 1963, the so-called validation statute, on which appellee relies, is an attempt to authorize the payment of a claim against the county under a contract made without authority of law, and is therefore constitutionally invalid. Anderson County Road Dist. No. 8 v. Pollard, 116 Tex. 547, 296 S.W. 1062 (1927).[4]

In the Fort Worth Cavalry Club case, the Adjutant General contracted to lease certain premises from the club for a period of five years beginning on Sept. 1, 1931. Rentals for the months of Sept., 1931, through Feb., 1932, were paid by warrants drawn on an available appropriation. A declaration of martial law in certain East Texas counties [5] created unforeseen expenses which exhausted the appropriation on Feb. 29, 1932. The state occupied the premises for the months of March through August, 1932, and during these months the Governor and Adjutant General, in payment of the rent, issued certificates in lieu of treasury warrants. In 1933, the Legislature passed an act appropriating money to pay the past due rent "and authorizing payment of said rent". Acts 1933, 43rd Leg., p. 336, Ch. 132. Upon the comptroller's refusal, the club sought a writ of mandamus to compel the comptroller to issue warrants out of this appropriation.

After extensive review of Texas cases and statutes, the Supreme Court denied the mandamus, holding: that the Adjutant General did not have statutory authority to make the lease contract; that the action of the Adjutant General and Governor did not ratify the contract; *that the appropriation act violated Sec. 44, Art. III,* because the club did not have a legal claim against the State at the time the appropriation was made; and that neither the appropriation act nor any other act of the State ratified the contract.

■ Unequivocally, the court holds that the act appropriating money to pay the past due rent "and authorizing payment of said rent" did not ratify the lease contract because the contract was made without authority of law. If the ultimate in ratification of a void contract, an act appropriating money to pay therefor, is not within the power of the Legislature, ratification cannot be accomplished by use of the words "validate and ratify". Appellee urges that the declaration that certain contracts "are hereby ratified and validated" authorizes appellant to make payment under the contracts condemned by this court. In effect, this contends that, although the Legislature could not enact a statute authorizing and directing appellant to pay the sums claimed under the contract, it has the

---

3. Vernon's Constitution of the State of Texas, Annotated, pp. 19, 24, 28, and 30.

4. See also State v. Ragland Clinic-Hospital, 138 Tex. 393, 159 S.W.2d 105 (1942); Ft. Worth Cavalry Club, Inc. v. Sheppard, 125 Tex. 339, 83 S.W.2d 660 (1935); Corsicana Cotton Mills, Inc. v. Sheppard, 123 Tex. 352, 71 S.W.2d 247 (1934); Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265 (1932); State v. Wilson, 71 Tex. 291,

9 S.W. 155 (1888); Ussery v. City of Laredo, 65 Tex. 406 (1886); State v. Steck Co., 236 S.W.2d 866 (Tex.Civ. App.1951, error ref.); State v. Haldeman, 163 S.W. 1020 (Tex.Civ.App.1913 error ref.); Shelby County v. Gibson, 18 Tex.Civ.App. 121, 44 S.W. 302 (1898, error ref.); Nichols v. State, 11 Tex.Civ. App. 327, 32 S.W. 452 (1895, error ref.); Matkins v. State, 123 S.W.2d 953 (Tex. Civ.App.1939, error dism.)

5. Cf. Constantin v. Smith, supra.

power to achieve this result by use of the magic words "validate and ratify".

Review of a few of the decisions cited in note 3, supra, manifests the consistency with which the Texas courts have applied the rule of Ft. Worth Cavalry Club, Inc., that the Legislature is without power to authorize payment under a contract made without authority of law. In Corsicana Cotton Mills, supra, the relator, through an erroneous construction of law, voluntarily paid franchise taxes to the State for several years. Thereafter, the Legislature appropriated funds to reimburse the relator. The comptroller refused to issue a warrant, and relator sought an original mandamus. The court denied the mandamus, holding that relator was a volunteer in paying the taxes, and

> "It therefore had no legal claim against the state for their repayment at the time this appropriation was made. Since the appropriation, at the time it was made, was not supported by legal claim, it was and is unconstitutional and void."

> \* \* \* \* \* \*

> "The constitutional provision under discussion here (Sec. 44) expressly prohibits the Legislature from making any appropriation when the same shall not have been provided for by pre-existing law. If the Legislature violates this provision, it is not only the right, but the duty of this court to declare such item of appropriation null and void."

Recognizing that the Legislature cannot appropriate county funds, as it does State funds, Sec. 53, instead of prohibiting appropriation, prohibits the Legislature from authorizing payment of county funds. The result is the same. The Legislature cannot, by curative statute, appropriation, or otherwise, authorize payment under a contract made without authority of law. All the cases cited in note 1, supra, also so hold.

Nichols v. State, 11 Tex.Civ.App. 327, 32 S.W. 452 (1895, error ref.) holds that a contract made without authority of law cannot be ratified. Under an act authorizing certain commissioners to award a contract for construction of the General Land Office building at a cost not to exceed $40,000.00, the commissioners awarded Nichols a contract for erection of the building for $39,663.00. After the work had progressed to some extent, the commissioners made a subsequent contract increasing the cost about $12,000.00. The Legislature granted the contractor authority to bring suit "to ascertain and fix the amount" due for the construction of the building. The trial court awarded the sum of $337.00, the difference between the maximum of $40,000.00 and the original contract price of $39,663.00. Upon the contractor's appeal, the court held that Sec. 44 prevented recovery on the additional contract. The court held:

> "[W]e are of opinion that the claim of appellant is not based upon any pre-existing law, and that such claim falls within the spirit and meaning of the prohibition contained in the latter part of the section of the constitution quoted. The apparent purpose of this provision of the constitution was to relieve the state from liability for all claims that were not authorized by a pre-existing law, *and to prohibit the legislature from paying them.* State v. Wilson, 71 Tex. 291, 9 S.W. 155." (emphasis supplied)

The parallel of these facts and holdings to the instant case is manifest. The commissioners were prohibited from contracting for a sum exceeding $40,000.

This court held that appellant not only was without statutory authority to expend funds for construction of a state highway, but was expressly prohibited from doing so by Art. 6674q–4.

In Nichols v. State, 11 Tex.Civ.App. 327, 32 S.W. 452, the court held that there can be no ratification in the face of a constitutional provision declaring a claim void and prohibiting a grant of money "by appropriation or otherwise". The contracts under consideration made without authority of law, are void, and

the Legislature is without power, by the express prohibition of Sec. 53 from validating a contract made without authority of law. See also State v. Haldeman, 163 S.W. 1020 (Tex.Civ.App. 1913, error ref.).

The complete force of the prohibition against paying a claim "when the same shall not have been provided for by pre-existing law" is evidenced by the holdings in State v. Ragland Clinic-Hospital, 138 Tex. 393, 159 S.W.2d 105 (1942) and State v. Steck Co., 236 S.W.2d 866 (Tex. Civ.App. 1951, error ref.).

The contract relied upon by appellee having been made without authority of law, as we originally held and now hold, the Legislature has no power to authorize payment of any alleged obligation thereunder.

■ Sec. 55, Art. III is the converse of Sections 44 and 53. These two sections prohibit the *payment of any claim* which is not a legal obligation, while Sec. 55 prohibits *the release of any obligation* to the State or political subdivision. The strict judicial construction of Sec. 55 proves that the Legislature can neither release an obligation to a county or create an obligation against a county under a contract made without authority of law. State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960); Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265 (1932); and Ollivier v. City of Houston, 54 S.W. 943 (Tex.1900).

■ Thus, under Texas decisions it is the law that after the occurrence of events, which under the law then existing do not create an obligation, *the Legislature can no more create the obligation by validating act than it can release an obligation arising from past events.* Appellee's construction of the Act of 1963 is a clear attempt to compel payment of a claim created against a county under a contract "made without authority of law".

■ Sections 52 and 53, depriving the Legislature of the power to authorize

a donation of funds of political subdiv⅃ sions and the payment of claims created under contracts made without authority of law, respectively, by their very terms, do not become effective until after the occurrence of the events giving rise to a controversy. For example, it is only after a county has made a contract without authority of law that the prohibition applies. In other words, these constitutional provisions intervene between the time of county action and the time of attempted action by the Legislature in the same manner as would a new constitutional provision depriving the Legislature of the power to initially authorize the contract. In the latter event, it is clear that the Legislature is deprived of the power of ratification, and there can be no distinction between an intervening constitutional provision depriving the Legislature of the power to initially authorize the act and one depriving the Legislature of the power to ratify. *In either event, the power to ratify is destroyed.*

■ In addition to its contention that the Legislature could not validate and authorize the payment of funds in question here, appellant insists that the Legislative Act does not in terms or in effect purport to do so. The act is general and neither expressly nor impliedly deals with the situation involved in this case, and we are of the view that, since the statute would be so clearly unconstitutional if construed as an attempt to validate the questioned contracts, it is our duty to construe the statute as not intending to effect an unconstitutional result.

Of the opinion that our original judgment, reversing the judgment of the district court was correct and that we should re-enter it, we here and now reaffirm and re-enter it. The judgment appealed from is therefore reversed and the cause is remanded with directions to enter judgment for the appellant.