

# THE ATTORNEY GENERAL
# OF TEXAS

January 7, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Charles E. Walker, Jr.　　　　　　　Opinion No. JM-615
General Counsel.
Board of Pardons and Paroles　　　　　　Re: Authority of the Board of
P. O. Box 13401, Capitol Station　　　　Pardons and Paroles to con-
Austin, Texas　78711　　　　　　　　　　 tract with counties for having
　　　　　　　　　　　　　　　　　　　　 prisoners incarcerated under
　　　　　　　　　　　　　　　　　　　　 the authority of warrants
　　　　　　　　　　　　　　　　　　　　 issued by the board

Dear Mr. Walker:

The Texas Board of Pardons and Paroles [hereinafter the Board] is considering contracting with a county to provide for the incarceration of prisoners arrested and held pursuant to board-issued warrants. You ask primarily whether the Board holds the authority to enter into such a contract. Your question involves two related issues: whether the Board may pay the county to incarcerate the Board's prisoners and whether the county may refuse to jail the Board's prisoners if the Board refuses to pay for their maintenance.

No person or agency holds the authority to make a contract which is binding on the state, except when authorized to do so by the Texas Constitution or statutes. Tex. Const. art. III, §§44, 49; State v. Ragland Clinic-Hospital, 159 S.W.2d 105, 106 (Tex. 1942). Thus, the power of the Board to enter into the contemplated contract depends upon the legislation which created and empowered the Board. See State v. Ragland Clinic-Hospital, 159 S.W.2d at 106.

Article IV, section 11, of the Texas Constitution initially created the Board of Pardons and Paroles. This provision grants the governor the power, conditioned upon the Board's recommendation, to grant reprieves and commutations of punishment and pardons. In 1983, article IV, section 11, was amended by vote of the people to make the Board of Pardons and Paroles a statutory rather than a constitutional agency. To parallel the passage of this amendment, the legislature amended sections 12(d) and 21(a) of article 42.12 of the Texas Code of Criminal Procedure to give the board the sole authority to revoke paroles and issue warrants for the return of a paroled prisoner. Acts 1983, 68th Leg., ch. 232, at 974. The Code of Criminal Procedure emphasizes that the Board of Pardons and Paroles is the agency of state with exclusive authority to grant paroles and gives the Board

exclusive power to supervise persons released on parole.  Code Crim. Proc. art. 42.12, §1.

Article 42.12, section 21(a), of the Code of Criminal Procedure provides:

> A warrant <u>for the return of a paroled prisoner</u>, a prisoner released to mandatory supervision, a prisoner released on emergency reprieve or on furlough, or a person released on a conditional pardon <u>to the institution from which he was paroled</u>, released, or pardoned may be issued by the Board in cases of parole or mandatory supervision, or by the Board on order by the Governor in other cases, when there is reason to believe that he has committed an offense against the laws of this State or of the United States, violated a condition of his parole, mandatory supervision, or conditional pardon, or when the circumstances indicate that he poses a danger to society that warrants his immediate return to incarceration. <u>Such warrant shall authorize all officers named therein to take actual custody of the prisoner and, at the discretion of the Board, detain the prisoner or return him to the institution from which he was released.  Pending hearing, as hereinafter provided, upon any charge of parole violation or violation of the conditions of mandatory supervision, the prisoner shall remain incarcerated.</u>  If the Board is otherwise authorized to issue a warrant under this subsection, the Board may instead issue to a prisoner a summons requiring the prisoner to appear before the Board or its designee for a hearing under section 22 of this article.  The summons must state the time, place, date, and purpose of the hearing.  (Emphasis added).

Article 42.12, section 21(a), of the code authorizes the Board to issue warrants and summons for the return of a paroled prisoner to the institution from which he was paroled.  The provision does not expressly authorize the Board to require the county to incarcerate persons in county jail on the basis of board-issued warrants. Incarceration near the place where the alleged parole violation occurred, however, is now necessary because of the United States Supreme Court's decision in <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). In <u>Morrissey</u>, the Court held that release on parole is a form of liberty that may not be denied without minimal due process.  Due process requires that a reasonably prompt prerevocation hearing be

afforded the alleged parole violator near the place where the alleged parole violation occurred. The Court did not prohibit or require that the prisoner be incarcerated pending the hearing; it merely required the hearing. The Code of Criminal Procedure, in section 21(a), of article 42.12, requires that the prisoner shall "remain incarcerated" pending a hearing. Consequently, you ask whether the Board may require the county sheriff to jail the Board's prisoners and whether the county could refuse to jail the Board's prisoners.

Attorney General Opinion JM-111 (1983) discussed the Morrissey case and concluded that local law enforcement authorities must hold an alleged parole violator until the constitutionally required prerevocation hearing is completed or legally waived. The opinion did not directly address whether the Board of Pardons and Paroles may require the detention. Attorney General Opinion JM-111 indicated that it would be "inappropriate for local law enforcement authorities to release such a person prior to the conclusion or waiver of the local revocation hearing." (Emphasis added). Although this result is correct, see Attorney General Opinion M-918 (1971), it has been suggested that the opinion could be read to imply that the Morrissey case requires that county sheriffs incarcerate alleged parole violators in county jail. This is not the case. See Fowler v. Cross, 635 F.2d 476, 480 (5th Cir. 1981). It is the Board's action, not the sheriff's action, which initially deprives a parolee of his liberty and thereby threatens a due process interest protected in Morrissey v. Brewer, supra. See Fowler v. Cross, supra. Even if the county could legally refuse to incarcerate alleged parole violators, the Board must still provide the constitutionally required prerevocation hearing.

Section 21(a) of article 42.12 does not expressly authorize the Board of Pardons and Paroles to require the county to jail the Board's prisoners pending a prerevocation hearing. The provision does, however, authorize the issuance of warrants which authorize "all officers named therein to take actual custody of the prisoner. . . ." (Emphasis added.) The purpose of the Board's warrant is to effect the return of the prisoner to the institution from which the prisoner was released. The prerevocation hearing required in Morrissey is now an essential prerequisite to that return. Consequently, although article 42.12 does not expressly address the due process questions raised in Morrissey, the Board has the implied authority to comply with the due process requirements of Morrissey and to require the county sheriff to accept the Board's prisoners pending prerevocation hearings. See Attorney General Opinion H-312 (1974).

The county may not refuse to accept such prisoners even if the Board refuses to pay for the prisoners' maintenance. Article 5116, V.T.C.S., provides, in part:

> (a)  Each sheriff is the keeper of the jail of his county.  <u>He shall safely keep therein all prisoners committed thereto by lawful authority, subject to the order of the proper court</u> and shall be responsible for the safe keeping of such prisoners.  (Emphasis added).

<u>See</u> <u>Douthit v. Jones</u>, 641 F.2d 345 (5th Cir. 1981); Attorney General Opinion MW-398 (1981); <u>see also</u> Code Crim. Proc. art. 2.18; Attorney General Opinion M-918 (1971).  As the agency of the state with exclusive authority over the parole system, the Board of Pardons and Paroles necessarily constitutes "lawful authority" for purposes of article 5116, V.T.C.S.  Accordingly, subsection (a) of article 5116 requires county sheriffs to incarcerate the administrative releasees of the Board of Pardons and Paroles.  <u>See also</u> V.T.C.S. art. 6873 (each sheriff shall execute all process and precepts directed to him by legal authority).

Similarly, article 2.18 of the Code of Criminal Procedure provides:

> <u>When a prisoner is committed to jail by warrant from a magistrate or court, he shall be placed in jail by the sheriff.</u>  It is a violation of duty on the part of any sheriff to permit a defendant so committed to remain out of jail, except that he may, when a defendant is committed for want of bail, or when he arrests in a bailable case, give the person arrested a reasonable time to procure bail; but he shall so guard the accused as to prevent escape.  (Emphasis added).

<u>See</u> Attorney General Opinion JM-151 (1984).

Attorney General Opinion JM-151 concluded that a county jail is required to accept state statute violators arrested by municipal police only after a magistrate or court has committed them to jail. Article 2.09 of the Code of Criminal Procedure lists those persons who are magistrates; it does not expressly include the Board of Pardons and Paroles.  Because the authority of the Board to revoke parole is an executive function, a related case which discusses whether the governor is a magistrate provides an analogue.  The court in <u>Ex parte Quinn</u>, 549 S.W.2d 198 (Tex. Crim. App. 1977) dealt with article 15.02 of the Code of Criminal Procedure, a provision that requires that warrants be signed by a magistrate.  The court noted that article 2.09 does not list the governor as a magistrate, but indicated that article 51.13 is a special statutory provision which controls over the more general article 15.02.  <u>Id.</u> at 201-02. Article 51.13 specifically authorizes the governor to sign warrants of arrest for extradition

purposes. For similar reasons, because article 42.12 of the code specifically authorizes the Board of Pardons and Paroles to issue executive warrants, such warrants have the status of warrants issued by magistrates for purposes of article 2.18. Thus, under article 2.18, counties must accept the Board's prisoners.

The Board lacks the legal authority to pay the county to incarcerate the Board's prisoners. A state agency cannot bind the state to a contract unless that agency is authorized to do so by the constitution or by a pre-existing statute. State v. Ragland Clinic-Hospital, 159 S.W.2d 105, 106 (Tex. 1942) (citing the Texas Constitution, article III, sections 44 and 49); see also Attorney General Opinion MW-465 (1982). No statute directs the Board to pay for the maintenance of its prisoners.

It should be noted that a county sheriff must perform his statutory duties even if his office is underfunded. See Attorney General Opinion H-595 (1975). This opinion does not address individual conflicts which may arise in particular situations because of other constitutional principles or statutory provisions. See, e.g., V.T.C.S. art. 5115.1; Attorney General Opinion MW-398 (1981) (jail standards); Douthit v. Jones, supra (false imprisonment and due process implications).

## S U M M A R Y

Pursuant to article 42.12, section 21(a), of the Texas Code of Criminal Procedure, the Texas Board of Pardons and Paroles may direct the county sheriff to incarcerate the Board's prisoners. Under article 2.18 of the code and article 5116, V.T.C.S., the county may not refuse to accept the Board's prisoners. The Board lacks the authority to enter into a contract to reimburse the county for the cost of jailing the Board's prisoners.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General