SARAH A. NICHOLS v. THE STATE OF TEXAS.

No. 1414.

**1. Contract With State—Constitutional Inhibition—Ratification.**

The act of the Legislature providing for the erection of a state land office building expressly limited the cost of the building to a sum not exceeding $40,000. The commissioners appointed by the act to let the contract made a further contract for additions to cost in excess of the prescribed limit. Section 44, article 3, of the Constitution provides that the Legislature shall not "grant by appropriation, or otherwise, any amount of money out of the treasury of

the State to any individual on a claim, real or pretended, when the same shall not have been provided for by pre-existing law." Held, that the further contract as to such excess was illegal and void, and not subject to ratification, nor has the Legislature authority to make any provision for its payment.

**2. Same—Doctrine of Ratification Applicable.**

A part of the amount covered by such further contract was within the prescribed limit of $40,000, but such contract was not let to the lowest bidder as required by the statute. Held, that to this extent it was within the power of the State to ratify the contract, the act of its officers in making it being within the scope of their authority, although exercised in a manner not authorized by the statute.

**3. Same—Ratification not Shown.**

The fact that the State has ever since its completion occupied and used the building, erected upon land belonging to the State, does not constitute a ratification of the unauthorized contract that was let for its construction without being awarded to the lowest and best bidder.

**4. Same—Permission to Sue Not a Ratification.**

Nor can the fact that the Legislature by special act authorized suit to be brought against the State upon the claim under the contract be treated as in effect a ratification, or a recognition that some amount was due upon the claim.

APPEAL from Travis. Tried below before Hon. Jas. H. Robertson.

*W. M. Brown* and *John Dowell*, for appellant.—1.   The court erred in its conclusion of law in holding that the law under which the said house was constructed having limited the cost of construction to $40,000, the commissioners had no power to agree to a larger sum, and the Legislature could not ratify any agreement, if made, because in said act for the original construction of said building, the said commissioners were limited only as to the cost of construction, all other matters being left to their judgment and discretion; and it was competent for the State to ratify and adopt the acts of said commissioners in extending the cost of construction, which the said State did by taking possession of said building and extra work and extra material and making it its own, and using and enjoying it. O'Hara v. The State, 8 Am. St. Rep., 726; Roberts v. United States, 11 Court of Claims Rep. (Nott and Hopkins), 98; Cole v. State, 102 N. Y., 54; Miller v. Dunn, 1 Am. St. Rep., 67; Stevenson v. Colgan, 25 Am. St. Rep., 230; Curtin v. Barton, 139 N. Y., 505; People v. Denison, 80 N. Y., 656; 1 Dillon on Mun. Corp., sec. 444; Brown v. Mayor, 63 N. Y., 240; 80 N. Y., 656; 71 N. Y., 529.

2.   The commissioners to build the building for the State contracted with Q. J. Nichols to do the extra work and furnish the extra material which in their judgment was needed, and which work he did and which material he furnished with the distinct understanding that he was to be paid for the same by the State, and the State, by a special act of its Legislature in behalf of plaintiff, having authorized her to bring this suit and ascertain and fix the amount of indebtedness due for such, the court erred in not holding that she could recover to the full amount of her claim established, not to exceed $7,000, in accordance with such act of reference to this court.   Roberts v. U. S., 11 Nott & Hopkins, 98.

*M. M. Crane*, Attorney-General, *H. P. Brown* and   *R. R. Lockett*,

assistants, for appellee.—1.    The court did not err in the conclusion of law, in holding that the law under which the said house was constructed having limited the cost of construction to $40,000, the commissioners had no authority to agree to a larger sum, and the Legislature could not ratify any such agreement if made.   Constitution of 1845, sec. 7 of art. 7; Constitution of 1876, sec. 44 of art. 3; Constitution of 1876, sec. 53 of art. 3; Chap. 54, pp. 51, 52, General Laws of Texas, Sixth Legislature; State v. Wilson, 71 Texas, 291, 302; City of Bryan v. Page, 51 Texas, 532; Carter v. United States, 2 Court of Claims, 144; Stanton v. State, 59 N. W. Rep., 738; Miller v. Dunn, 1 Am. St. Rep., 67; Goltman v. San Francisco, 20 Cal., 96; Brady v. Mayor, 16 Howard's Practice, 432; Delafield v. State, 26 Wend., 191; Mayor and City Council of Baltimore v. Reynolds, 20 Md., 1; The Floyd Acceptance Cases, 1 Court of Claims, 270, and 7 Wall., 666; Story on Agency, sec. 307, art. 17, note 1, and authorities there cited; Anson on Contracts, 184; State v. Hastings, 10 Wis., 468.

2.   The commissioners being public agents, acting under special authority conferred by a statute expressly limiting their powers, their contracts in excess of the authority conferred were void as to the State, and could not be ratified by it, particularly when by reason of the constitutional provisions above cited, the Legislature itself was prohibited from ratifying such acts.   See authorities supra.

3.   The act referring the claim of plaintiff to the court simply referred it to the court to determine whether such claim constituted a lawful demand against the State; and the questions for determination were, what has been done and what are the legal principles by which the responsibility of the State is to be measured, and whether upon these principles the State should be held liable.   State v. Wilson, 71 Texas, 300, in connection with Special Laws 1887, p. 18; Carter v. State, 21 Am. St. Rep., 404; Hoaglan v. State, 22 Pac. Rep., 142, and authorities above cited.

FISHER, CHIEF JUSTICE.—Sarah A. Nichols sued the State of Texas by authority of the following act of the twenty-third Legislature of the State:

"An act granting permission to Sarah A. Nichols to bring suit against the State of Texas in the District Court of Travis County, to ascertain the amount, if any. the State is indebted to said Sarah A. Nichols, surviving widow of Quilla J. Nichols, on account of the construction of the General Land Office building of Texas.

"Section 1.   Be it enacted by the Legislature of the State of Texas, That Sarah A. Nichols be and is hereby granted permission to bring suit against the State of Texas in the District Court of Travis County, to ascertain and fix the amount, if any, the State is indebted to said Sarah A. Nichols, surviving widow of Quilla J. Nichols, on account of the construction of the General Land Office building of Texas; provided, that she shall give the necessary cost bond as in other civil suits;

and provided further, that the amount which said Sarah A. Nichols may be permitted to recover shall not exceed $7000, and such sum within said amount as she may recover shall not bear nor include interest.

"Sec. 2.   Either party shall have the right of appeal, and any judgment finally established against the State in such suit shall be a liquidated debt which shall be paid by the State.

"Sec. 3.   The advanced age and infirm condition of the said Sarah A. Nichols make it important that whatever may be done by way of giving her an opportunity to establish her claim against the State shall be done at the earliest possible day, wherefore there exists an imperative public necessity and an emergency that the rule requiring bills to be read on three several days be suspended, and that this act take effect from and after its passage, and it is so enacted."

The court below rendered judgment in favor of appellant for only $337, from which she appeals.

The case was heard before the court below upon an agreed statement of the facts, which agreement is a part of the record, and which this court adopts as its conclusions of fact.   As a part of these facts it is shown that Q. J. Nichols, husband of appellant, erected and constructed the general land office building now in use by the State, and that the act of the Legislature that authorized the construction and erection of the building, in express terms limited its cost to a sum not exceeding forty thousand dollars.   The original contract for the erection of the building was awarded to Nichols for $39,663.   This act also provided that the commissioners appointed by the act to contract for the erection of the building should advertise for bids and let the contract out to the lowest and best bidder.   After the award was made to Nichols, and after he had progressed to some extent in the erection and construction of the building, additions and enlargements were made under a subsequent contract between Nichols and the commissioners which increased the cost of construction of the building about $12,000, upon the promise that Nichols would look to the State for such increased sum, and the commissioners would recommend its payment to a subsequent Legislature.   The subsequent Legislature did not make any appropriation to meet this additional sum, but did appropriate one thousand dollars to furnish the land office.   The State received the land office when completed, and has continually used and occupied it since, and has paid the amount covered by the original contract.

It is claimed that the subsequent contract by which the cost of the building was increased beyond the forty thousand dollars that was appropriated by law for the erection thereof, and the act of the Legislature that authorized appellant to institute this suit, are violative of sec. 7, art. 7, of the constitution of 1845; and sec. 44, art. 3, of the present constitution.   These two provisions of the different constitutions, in so far as they relate to the question before us, are identical.   They are as follows:   "The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors not provided

for in this constitution; but shall not grant extra compensation to any officer, agent, servant or public contractor after such public service shall have been performed, or contract entered into for the performance of the same; nor grant by appropriation or otherwise any amount of money out of the treasury of the State to any individual on a claim, real or pretended, when the same shall not have been provided for by pre-existing law."

The constitution of 1845 excepts the claims of persons against the Republic of Texas from the operation of this provision; and the present constitution has the additional prohibition to the effect that no one shall be employed in the name of the State unless authorized by pre-existing law.

We do not think that part of the sections of the constitutions quoted that relate to extra compensation have any bearing on the case before us, and to the claims of appellant. That provision evidently means that when compensation is agreed upon or fixed for certain services, no extra compensation will be allowed for the same service. It was not intended to embrace claims that arose out of extra service. If extra service was rendered by virtue of proper authority, compensation could be made therefor. But we are of opinion that the claim of appellant is not based upon any pre-existing law, and that such claim falls within the spirit and meaning of the prohibtion contained in the latter part of the section of the constitution quoted. The apparent purpose of this provision of the constitution was to relieve the State from liability for all claims that were not authorized by a pre-existing law, and to prohibit the Legislature from paying them. State v. Wilson, 71 Texas, 291. The law that authorized the commissioners to make a contract binding upon the State for the erection of the land office building, in express terms declared that the cost of the building and furnishing it should in no case exceed the sum of forty thousand dollars. This was an express limitation upon the authority of the agents representing the State; and their efforts in this direction in attempting to impose upon the State a contract that increased its liability beyond the amount stipulated, was clearly unauthorized, and an act not binding on the government. Mechem on Public Officers, secs. 828-834; Ferguson v. Halsell, 47 Texas, 422; City of Bryan v. Page, 51 Texas, 534; Curtis v. U. S., 2 Court Claims, 144; Reichard v. Warren Co., 31 Iowa, 387; 19 Am. Eng. Encycl. Law, 510 and notes. The claim of appellant to the extent of about twelve thousand dollars that grew out of the additional contract for the extra service was in excess of the amount provided by law for the construction of the building, hence there was an absence of a pre-existing law upon which to base this claim. It is contended in argument that the provision of the constitution under consideration simply prohibits the Legislature from appropriating money to pay claims for which a previous law has not provided, and that this provision does not extend to prohibiting the State in paying claims such as this, in something else of value other than money. Also, that the

special act of the Legislature that authorized the appellant to submit this controversy to the courts is not opposed to this provision of the constitution; and that the courts should entertain jurisdiction and give the appellant such judgment as she may be entitled to under the facts. This is accompanied by a proposition to the effect that the courts need have no concern about the question of payment by the State, as the Legislature may see fit to satisfy appellant's claim in something else of value besides money appropriated out of the treasury of the State. Opposed to this view is the case of State v. Wilson, 71 Texas, 302.

The appellant's claim is a money demand, she sues upon it as a debt due by the State, and the act of the Legislature that gives her this authority treats it as such. The judgment that the courts would render, if in her favor, would be a demand for money. Property of the State cannot be seized under process for the satisfaction of a judgment against her, but it must be paid and satisfied by a Legislative appropriation. We know of no way provided by law, nor any that may be created by the Legislature, for the payment of judgments against the State, except by an appropriation of money for that purpose. It is not the purpose of the courts to undertake to enforce demands by awarding judgments that the law says could not be enforced in the form and in the right in which they are rendered. But we may go further than this and confidently express the opinion that the adaptability of the rules of construction to the provision of the constitution in question warrants us in holding that the spirit and meaning of this provision, if not its express letter, deny the Legislature the authority to pay or satisfy any claim against the State that is not based and founded on some pre-existing law. This is the effect of the ruling made in the State v. Wilson, supra. We are constrained to hold that the appellant's claim, in excess of the forty thousand dollars appropriated by law, is illegal in the sense that it was and is not authorized by law. We only desire to say, before leaving this branch of the case, that the question of ratification in so far as it is insisted it applies to the demand in excess of the forty thousand dollars, we need not decide, as our views on the question just discussed are to the effect that there can be no ratification or implied liability in the face of the provisions of the constitution under which we declare the appellant's claim to this extent void. Ratification or implied liability will not extend to acts that are expressly prohibited by law, so long as the law is alive that prohibits the act. Reichard v. Warren County, 31 Iowa, 390; 81 Am. Dec., 99; Brady v. City of New York, 20 N. Y., 541. You cannot indirectly, by ratification, create a liability against the State, when the constitution denies the liability and prohibits the Legislature from giving any vitality to such a claim. To permit liability to be created under such circumstances would be to nullify the constitution, and to authorize the accomplishment in an indirect way of the thing that is expressly prohibited.

The appellee, by cross assignment, complains of the judgment of the court in so much as it establishes against the State a liability for the

sum of $337 and costs. The court below evidently reached this result by ascertaining the difference between the forty thousand dollars appropriated for building and furnishing the land office, and the sum of $39,663, the amount for which the contract was awarded to Nichols.

The law that authorized the construction and erection of the building required that the contract therefor should be let to the lowest and best bidder. The contract under which the additions were made to the building, and which represents the claim sued on, was not let to Nichols as the lowest and best bidder, but such new contract was made with him by the commissioners with the understanding that he make such changes and additions as the commissioners desired, and he should look to the State for settlement.

The rule of law is well supported by authority as well as reason, that when it is sought to hold the government bound and liable for contracts entered into and executed by its agents and officers, the manner of execution as prescribed by law must be complied with, otherwise the contract is not binding upon the government. Mechem, Public Officers, secs. 828-834; 19 Am. & Eng. Encycl. Law, 511; 1 Dillon, Municipal Corp., secs. 445-471; City of Bryan v. Page, 51 Texas, 535; Ferguson v. Halsell, 47 Texas, 422; Pulliam v. Runnells Co., 79 Texas, 366; Curtis v. United States, 2 Court Claims, 144; 31 Iowa, 387; McCracken v. City San Francisco, 16 Cal., 591; Zottman v. San Francisco, 81 Am. Dec., 100; Missouri v. Bank, 45 Mo., 538: "When the charter or incorporating act requires the officers of the city to award contracts to the lowest bidder, a contract made in violation of its requirement is illegal, and in an action brought on such contracts for the work, the city may plead its illegality in defense." 1 Dillon Mun. Corp., sec. 466 and notes; 81 Am. Dec., 101. The government is only liable to the extent of power it has actually given to its agents (45 Mo., 538); and those dealing with him must take notice of this fact. It cannot be questioned but that the claim for $12,000, covering the changes and additions to the building, were based upon a contract between the commissioners and Nichols. Zottman v. San Francisco, 81 Am. Dec., 98. This being true, it was as important to the interests of the State that the contract for changes in the erection and cost of the building to this extent should be let to the lowest and best bidder as it was, in the first instance, that the original contract should be so let, and the principle of law just stated should apply in both instances. These views necessarily lead to the holding that such additional contract was not binding on the State because not let in the manner required by law, unless the State has ratified the unauthorized contract. As said before, the State could not ratify this additional contract for an amount greater than was authorized by pre-existing law; but as to a contract that covered an amount that did not extend beyond the sum limited by the law in the expenditure for the building, the State could ratify, although the plan of contracting required by law was not pursued, provided the facts show a ratification. The State may ratify the unauthorized acts and con-

tracts of its agents and officers which are within the scope of corporate authority. 1 Dillon Corp., sec. 463. The power of the State to make a contract authorizes it to ratify one when made, although entered into without its express authority. Blum v. Looney, 69 Texas, 3.

The State had the power, through its Legislature in the first instance, to dispense with the requirement that the contract should be let to the lowest and best bidder, and having that power, it could ratify a contract that was entered into without a compliance with that requirement. This brings us to the question whether the facts show a ratification. The appellant insists that the special act authorizing appellant to bring this suit is in effect a ratification and recognition upon the part of the Legislature that the State is due the appellant some amount for the services of her husband in the erection of the building. We do not believe that this effect can be given to the act. The evident purpose was not only to authorize the courts to ascertain the amount of indebtedness, if any, but to ascertain if the State was liable. If it was a purpose of the act to authorize the courts to go into the merits of the claim, it has the authority to determine any matter of fact or law that would either create or defeat a liability of the State. We believe such was the purpose of the act. Carter v. State, 21 Am. St. Rep., 404. If the question in the Legislature's mind was solely one of amount of indebtedness, that fact could have been readily ascertained by an inquiry by the Legislature, and there would have been no reason or necessity of a reference to the courts. But the Legislature evidently contemplated that there was some doubt as to the liability of the State, and that there were necessarily judicial questions to be determined in order to ascertain the rights of the parties. Hence in deference to the principle that limits their functions to matters of legislation proper, and excludes the exercise of duties properly pertaining to the judicial arm of the government, they referred the matter to the courts for determination. Consequently, we do not think any ratification can spring from this act of the Legislature, but, upon the contrary, it may be considered as evincing a purpose not to ratify, because in the act the State admits nothing, and throws the whole matter upon the courts. The declaration of the act is to the effect—you say you have a claim, the State grants you the authority to sue, go into the courts and prove the State liable if you can, the State admits nothing. The other acts of ratification relied upon are, that the State, after the completion of the building, made an appropriation of one thousand dollars for furniture for it; and took possession by its land commissioners; and have since used the building for carrying on the business of one of its departments of State government. That the claim has been presented to the several Legislatures and that it would be reported favorably by one branch thereof, but defeated or not acted on by the other branch. It seems to us that the only act that has a tendency to establish ratification is that the State has used and occupied the building since its erection. It had a right to appropriate, if it saw fit, as much money as it pleased to the furnishing of the building, and

the fact that a subsequent Legislature did so has little force, if any, tending to establish ratification, when considered as a fact independently of the use by the State. The fact that subsequent Legislatures refused or failed to pass a bill for the relief of appellant, or to officially recognize the claim of appellant and provide for its payment, is a fact going to show that they did not ratify.

The authority to ratify can only be by the power that created the contract, and acts of ratification by an officer or agent of the government is not binding upon the principal.

The authority to contract in this instance was the express act of the Legislature which accurately defined the powers of its agents and prescribed the manner of contracting. And upon principle it would seem that acts to constitute ratification must come from the source that authorized the contract, and not from its agents. 19 Am. & Eng. Encycl. Law, 473-477, and notes; 1 Dillon Mun. Corp. (4th ed.), sec. 465; Marsh v. Fulton Co., 10 Wall, 683; Horton v. Town of Thompson, 71 N. Y., 524. In this case it is seen to be the Legislature of the State which is the principal; only it had the power to authorize the contract, and we do not see how any principle of the law of ratification will authorize some other agent of the State or department of the government by its acts to bind the State to a ratification of the contract. State of Missouri v. Bank, 45 Mo., 541. Such a rule would subvert the principle that ratification must flow from the source that authorizes the contract. With this aspect of the law, we search the record in vain for any ratification upon the part of the Legislature; but, upon the contrary, the repeated refusal or failure of that body to grant relief repels any inference of intended ratification.

Finally, does the fact that the State has occupied and used the building since its completion create an implied obligation to pay for it, or constitute in law a ratification of the unauthorized contract in awarding it without complying with the requirement that it should be let to the lowest and best bidder? We must give a negative answer to both of these propositions. There are cases which hold that when the law requires a thing to be sold at public auction (McCracken v. San Francisco, 16 Cal., 626), or contract to be let to the lowest bidder (Zottman v. San Francisco, 81 Am. Dec., 100; s. c., 20 Cal., 96; and to same effect City of Bryan v. Page, 51 Texas, 535, and other cases), that these requirements cannot be dispensed with, and a contract entered into in violation thereof can not be ratified. But independent of these views, and holding that the failure to observe the requirements of. the law in awarding the contract may be ratified, we do not think there is any liability in this case against the State growing out of implied obligation or ratification.

The land upon which the building was erected belonged to the State, and as soon as it was attached to the soil it became a part of the realty, and the building became the property of the State as soon as it was constructed. The contractors, after the building was completed, retained no

interest in it or the land upon which it was situated by lien (Atascosa County v. Angus, 18 S. W. Rep., 563) or otherwise; and it must have been known to him that the State had the right to possession and would occupy the building and use it when completed, whether the law that regulated the execution of the contract was complied with or not. The building was erected for public purposes, and it was contemplated that it should be immediately used for that purpose. The necessities of the State required it for public use, and a use and occupancy under such circumstances should not be held to make the State liable for an illegal contract that was entered into in part for its construction.

The government can only be liable for the extent of the power it has actually given under the law that created the right of the commissioners to contract (45 Mo., 528); and it would seem that no implied liability ought to exist in such a case when there has been a violation of law in some of its essential features in entering into the contract. When, under the law, the party who has the right to use the building erected, whether the law was violated or not in the contract for its erection, does in fact occupy and use it, it can not be said that he does this recognizing the claim of the contractor under the illegal contract, but his holding may be solely by his right in the premises, and may be in opposition of any pretended claim of the contractors. Taking possession and using property which the possessor is entitled to does not necessarily imply liability or constitute ratification. Sheer v. Cummings, 80 Texas, 295.

The State, through its officers, whose duties required them to use the building in performance of their official functions, had very little freedom or right of election in the matter of the use of the building; and as said in Zottman v. San Francisco, 20 Cal., 96 (s. c., 81 Am. Dec., 105), and Reichard v. Warren County, 31 Iowa, 391, "The mere retention and use of the benefit resulting from the work, where no such power or freedom of election exists, or where the election cannot influence the conduct of the other party with reference to the work performed, does not constitute such evidence of acceptance as that the law will imply therefrom a promise to pay."

In City of Bryan v. Page, 51 Texas, 535, it is held that the use of a thing by the city that arose out of a contract not made in the terms of the law imposes no implied liability upon the city, and does not in effect constitute a ratification of the alleged contract. To same effect, Reichard v. Warren County, 31 Iowa, 387. Many authorities may be cited in support of these views.

In the case of City of San Antonio v. French, 80 Texas, 578, the court cites with the approval the doctrine announced in Bryan v. Page, 51 Texas, and in conclusion imposes upon the city of San Antonio an implied liability for the use of rooms occupied by its officers in behalf of the city. As authority for this ruling, the court cites with approval the case of Gas Company v. San Francisco, 9 Cal., 453, in which the opinion was by Judge Field. In a later case by the same court (Zottman v. San Francisco, 20 Cal., 96), Judge Field in speaking for the court modi-

fies and explains the case of Gas Company v. San Francisco, supra, and in effect overrules it in the point now under discussion.

The ruling made in City of Denison v. Foster, 28 S. W. Rep., 1053, is based upon the cases of Gas Co. v. San Francisco, and San Antonio v. French, supra.

These cases are distinguishable from the one before us in this: They hold that when the city obtains possession of and uses the thing by virtue of the unauthorized contract, it becomes liable for what the thing, or use thereof, is reasonably worth. In such a case the city had no right independent of the contract, and its possession and use was directly referable to this contract, and was not the assertion of a right and use of the thing independent of the contract, as might have been, and probably was, in the case before us. The State's right to the use of the property of which it had the title did not depend upon the contract, and the right to use its property was not impaired or enlarged because of the contract. In this case the use and possession of the State was asserted by reason of a right it had independent of any unauthorized contract; but in the case cited, the use and possession was solely traceable to the alleged contract. In the latter case, upon principles of equity, the court may have properly held that the cities, by reason of the fact of the uses and possession of the property, when such possession and use was based solely upon the contract and not by reason of any right that the cities had independently of it, were bound and liable for its value. The courts in these cases did not mean to hold that when the cities would have the undoubted right to the use and possession of the property as the owners, independent of the unauthorized contract, such use and possession would amount to an implied obligation to pay for such property, or create a ratification of the illegal contract; because, being the owners and having the right to the use of the property, their possession might be solely by virtue of such ownership, and not by reason of the unauthorized contract. The assertion of any different principle would lead to the holding that a city whose property has been improved without its consent or in violation of the express authority of the city, by reason of an unauthorized and illegal contract, would be deprived of the use and possession of its property unless it exercised these rights burdened with the illegal or unauthorized charge against it. If, the use and possession of its property, which it in law is entitled to, and which in many instances, by reason of the necessities and the requirements of the public, it must use in the performance of their duties to it, could be held to ratify the unauthorized contract or create an implied obligation to be bound by, it would in many instances place the State in the unfortunate dilemma of enjoying all the essentials and rights of full ownership in the property without the added privilege and right of possession and use incident and permissible in such cases. For, in case the State denied its liability under the contract, and insisted in asserting its illegality, it would, in order to defeat the unauthorized contract, have to abstain from a use and possession of the property of which it was the owner.

It seems to us that it would be against reason to hold that a use and possession under such circumstances would create either ratification or an implied obligation against the State.

The judgment of the court below is reversed and judgment is here rendered that the appellant take nothing in her suit against the State, and that the State go hence fully discharged, and that costs of this appeal, as well as of the court below, is taxed against the appellant and the sureties in her cost bond.

*Reversed and rendered.*

Delivered October 30, 1895.

Writ of error refused.