## STATE v. STECK CO.
### No. 9937.

Court of Civil Appeals of Texas.
Austin.

Feb. 7, 1951.

Rehearing Denied Feb. 28, 1951.

Price Daniel, Atty. Gen., W. V. Geppert and John Reeves, Assts. Atty. Gen., for appellant.

Smith, Rotsch & Steakley, Zollie C. Steakley and Cecil C. Rotsch, all of Austin, for appellee.

GRAY, Justice.

The Steck Company, a private corporation, after being granted permission by the Legislature to do so, filed this suit against the State to recover the alleged value of 39,603,690 cigarette tax stamps manufactured or printed by Steck and delivered to the State.

A non-jury trial resulted in a judgment for Steck, and the State has appealed.

The stipulated facts show that on July 6, 1937, the Cigarette Tax Stamp Board and Steck entered into a contract whereby Steck agreed to print and manufacture for the State 300,000,000 cigarette tax stamps at the price of 11.95 cents per one thousand stamps. This contract was awarded on competitive bids and was approved by the Governor, the Secretary of State and the Comptroller. The contract was fully performed, payment for the stamps was made, and the contract expired May 15, 1939. In the summer of 1939, while the Legislature was still in session, the Cigarette Tax Stamp Board contemplated that the Legislature would change the cigarette tax stamp law; whereupon the chief of the printing division of the Board of Control (that being the Cigarette Tax Stamp Board) contacted the vice-president of Steck, who was also the manager of its sales contract division, an agreement was made by these parties that Steck would furnish the State 100,000,000 cigarette tax stamps for the same price fixed by the contract of July 6, 1937. Steck was to deliver the stamps as they were needed and called for, and payment was to be made for the stamps when delivered. A requisition for 100,000,000 cigarette tax stamps was prepared by the Treasury Department, was sent to the Board of Control, was there signed by the director of the printing division and one member of the Board, and a copy was then sent to Steck. This contract was not approved by the Governor, the Secretary of State and the Comptroller, or either of them. By different deliveries a total of 63,000,000 stamps were delivered and accepted but were not paid for. A dispute arose as to whether or not, under the law, payment for the stamps could be made and Steck demanded a return of the stamps delivered. At the time there were on hand 23,396,310 stamps, but 39,603,690 had been sold to distributors and wholesale dealers to be placed on individual packages of cigarettes as provided by law. The 23,396,310 stamps then on hand were later sold to the State under a new contract made in the manner and form prescribed by law and are of no further importance here.

Mr. E. W. Jackson, president of Steck, testified that the stamps were not printed but were manufactured by the decalcomania process; that the same machinery is used in that process that might be used in some printing. "You don't use ink in the sense you do in printing. You use pigments. This is largely a paint process. You use synthetic oils. * * *"

The trial court filed findings of fact consistent with the facts as stated, supra, and further, by finding 11, that the stamps were not printed but were manufactured, and that the order for them was not for printing.

The trial court concluded that the stamps were not voluntarily delivered to the State and never became its property; that the stamps were taken and applied to a public use without the consent of the owner and

without any compensation being made therefor; that Steck's claim for the reasonable value of the stamps is a legal obligation against the State, and that the common law right of Steck to recover the reasonable value of its property is a pre-existing law within the meaning of Art. III, Sec. 44, Texas Constitution, Vernon's Ann.St.Const., and that there is nothing in the Constitution and statutes of the State which prohibits the payment of the reasonable value of property of an individual which is used and destroyed by the State for a public use.

"6. The taking, use and destruction of the cigarette tax stamps belonging to The Steck Company was for a public use and was without the consent of The Steck Company, and, under Article I, Section 17, of the Texas Constitution, The State was and is under legal obligation to make adequate compensation to The Steck Company for the reasonable value of the cigarette tax stamps."

Appellant's first three points are directed to the holding of the trial court that the common law is pre-existing law within the meaning of Art. III, Sec. 44, Constitution of Texas.

The constitutional and statutory provisions pertinent here are: "Sec. 44. The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

Article 16, Sec. 21, Texas Constitution, provides: "All stationery, and printing, except (items not here involved) * * * shall be performed under contract, to be given to the lowest responsible bidder,

below such maximum price, and under such regulations, as shall be prescribed by law. * * * And all such contracts shall be subject to the approval of the Governor, Secretary of State and Comptroller."

Section 3 of Art. 7047c–1, Vernon's Ann. Civ.Statutes, creates a "Cigarette Tax Stamp Board", and provides: " * * * the said Board shall be and is hereby required to design and have printed or manufactured new cigarette tax stamps of such size and denominations and in such quantities as may be determined by the said Board. * * * The printing or manufacturing of the stamps shall be awarded by competitive bid and the contract shall be awarded to the person submitting the lowest and best bid that will afford the greatest and best protection to the State in the enforcement of the provisions of this Act."

Article I, Sec. 17, Texas Constitution, provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; * * *."

The parties agree that the cigarette tax stamps were produced by the decalcomania process, and appellee contends this process does not constitute printing and that the trial court's conclusion in that respect was correct.

We do not think it is of controlling importance for us to here determine that finding No. 11, supra, is a finding of fact, or is a conclusion of law as contended by appellant. There the court found the stamps were "manufactured"; if so, then the contract for their manufacture was required to be awarded in the manner provided in Art. 7047c–1, Sec. 3, supra. If printed, then such contract was required to be awarded in the manner provided in that Article and, also, Art. XVI, Sec. 21 of the Constitution, supra.

The contract, in any event, then is unenforcible, and it becomes unnecessary for us to determine whether the stamps were printed.

Article 7047c–1 was in effect at the time the contract, or agreement, pursuant to which the 63,000,000 stamps were made and delivered, and all parties were required to take notice of its provisions and, also, the constitutional provisions pertinent to the making of contracts with the State. State v. Ragland Clinic Hospital, 138 Tex. 393, 159 S.W.2d 105. All parties agree that these constitutional and statutory provisions were not complied with.

Article 1, Vernon's Ann.Civ.Statutes, provides: "The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature."

In order for the common law to be pre-existing law authorizing a recovery by appellee, it must not be inconsistent with the Constitution and laws of the State. The powers and duties of the officers of the State to make contracts for the printing and manufacture of cigarette tax stamps are prescribed by Sec. 3 of Art. 7047c–1, supra, which requirements were not complied with. This contract was voluntarily entered into, the stamps were voluntarily delivered under it, and payment for them was expected to be made as provided for by the contract. If appellee had refused to make delivery of the stamps under the contract, the State could not have compelled performance. In making the contract before us, the officers of the State could exercise only those powers conferred on them by the law of the State, and the power to make the contract, as it was made, is not provided in that law, for which reason a legal obligation against the State was not created by the unauthorized contract, and appellee's claim was not provided for by "pre-existing law." Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660; Austin National Bank v. Sheppard, 123 Tex. 272, 71 S.W.2d 242; Nichols v. State, 11 Tex.Civ.App., 327, 32 S.W. 452, Er.Ref.; State v. Perlstein, Tex.Civ.App., 79 S.W.2d 143, Er.Dis.

Appellant next complains that the trial court erred in holding that appellee's property was taken, destroyed and applied to public use without adequate compensation being made, in violation of Art. I, Sec. 17, Texas Constitution.

Appellee's vice-president and manager of its sales contract division testified that the cigarette tax stamps were not kept in stock, but were manufactured on each individual order as it was received from the State, and that appellee would not have begun the printing and delivery of the stamps without the requisition for them.

It is clear that the stamps were delivered to the State, and its possession of them was by virtue of the contract and not by virtue of a taking within the meaning of Art. I, Sec. 17, supra. Appellee by making the contract, manufacturing the stamps and delivering them to the State did so voluntarily and with its own consent, and can not now say the stamps were taken under the power of eminent domain. 29 C.J.S., Eminent Domain, § 5, p. 782. Article I, Sec. 17, supra, has reference to the taking of private property under the power of eminent domain. Norris v. City of Waco, 57 Tex. 635; Gulf, C. & S. F. Ry. Co. v. Brandenburg, Tex.Civ.App., 167 S.W. 170, Er.Ref.

The State, by its Constitution and statute, has limited the right of its officers to make contracts for the printing of cigarette tax stamps to the manner therein prescribed and specified. And since the officers representing the State did not follow the prescribed and specified steps in making the contract the State was not bound. Authorities, supra. And since no legal liability exists against the State by reason of the unenforcible contract, Art. I, Sec. 19, of the Constitution was not violated.

Appellee says the furnishing of the stamps was by reason of a temporary emergency and was authorized by Art. 618, Vernon's Ann.Civ.Statutes. At the time the contract involved was made, no bids had been rejected, there had been no failure to execute a bond, and no contract had been abrogated for which reason "the emergency" therein provided for did not exist.

What we have already said renders unnecessary our consideration of appellant's fifth point, which complains of the allowance of interest.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing by its suit against appellant.

Reversed and rendered.