

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 2, 1961

Mr. Wm. J. Burke
Executive Director
State Board of Control
Austin, Texas

Opinion No. WW-1044

Re: Whether the State of Texas
now has a valid contract
with the City of Austin
for supplying of electrical
power to the state build-
ings in the Capitol complex
at the rates set forth in
the contract dated March
15, 1935, and related ques-

Dear Mr. Burke:

tions.

Your request for an opinion reads as follows:

"On March 15, 1935, the State of Texas,
acting by and through the State Board of Con-
trol, and the City of Austin, acting by and
through its City Manager, entered into a con-
tract, a copy of which is attached, whereby
the City of Austin was to furnish electrical
power to the institutions at that time under
the control and supervision of the Board of
Control. In March, 1936, a purported contract
between the City of Austin, executed only by
the City Manager of the City of Austin, a
copy of which is attached, purportedly extended
the terms of the contract entered into March
15, 1935. In November, 1943, the Chairman of
the Board of Control received a letter from
the acting City Manager of the City of Austin,
a copy of which is attached, wherein it was
stated that the 'State Capitol and buildings'
would be included in the contract dated March
15, 1935.

"From March 17, 1935, through and includ-
ing November, 1959, the State of Texas has paid
for the supply of electricity used in connection
with the Capitol complex at the rate prescribed
in the contract with the City of Austin, dated
March 15, 1935. The City of Austin has accepted

such payments.  The budget proposals for the State Board of Control for appropriation for the payment to the City of Austin for electric power were presented to the Legislature on the assumption that the rates in existence during the biennium ending August 31, 1959, would continue in existence through the biennium ending August 31, 1961, and based on those figures, the Legislature appropriated Item 65 to the State Board of Control.

"On or about August 31, 1959, the City of Austin adopted new electric rate schedules. For the first two months of the biennium ending August 31, 1961 (the months of September and October, 1959), the City of Austin submitted its bill under rates set forth in the contract dated March 15, 1935, and such bills have been paid by the State of Texas and accepted by the City of Austin.  The City of Austin billed the State of Texas for electric power during the month of November, 1959, at the new electrical rates adopted by the City of Austin on or about August 31, 1959.  This bill was rejected by the State Board of Control and returned to the City of Austin.  The City of Austin then billed the State of Texas under the rate set forth in the contract dated March 15, 1935, and the State of Texas made payment of this bill and such payment was accepted by the City of Austin.  Since November 30, 1959, until the present date, the City of Austin has billed the State of Texas under the new electrical rates adopted by the City of Austin on or about August 31, 1959, and such bills have been rejected by the State of Texas, and the City of Austin has refused to bill the State of Texas under rates set out in the contract dated March 15, 1935.  No electrical bill has been paid by the State of Texas to the City of Austin for the months of December, 1959, January, 1960, and February, 1960.  If the rates adopted by the City of Austin on or about August 31, 1959, are payable by the State of Texas, there are not now sufficient monies appropriated to the State Board of Control to pay for the electrical supply estimated to be needed for the biennium ending Ausust 31, 1961.

"In view of the foregoing, your opinion is requested on the following questions:

"1.    Does the State of Texas, under the facts submitted, now have a valid contract with the City of Austin for the supplying of electrical power to the Capitol complex at the rates identified and set forth in the contract dated March 15, 1935?

"2.    If your answer to Question No. 1 is in the affirmative, does the City of Austin have the power to cancel the contract without the approval of the State of Texas through its duly authorized agents?

"3.    If your answer to Question No. 1 is in the negative, does the State of Texas have any valid contract with the City of Austin for the supplying of electrical power to the Capitol complex?  If your answer to this question is in the affirmative, what are the rates to be paid for the supplying of such electric power?

"4.    If your answer to Question No. 3 is in the affirmative, and the rates to be paid the City of Austin exceed the amount of the appropriation made for such purpose, is the State Board of Control subject to the penalties provided for in Section 3 of Article V, House Bill 4, Acts of the 56th Legislature, Third Called Session, 1959, Chapter 23, page 442?

"5.    If the State of Texas does not now have an existing valid contract, may the State of Texas enter into a contract with the City of Austin calling for rates in excess of the amount appropriated for such purpose?"

Subsequent to your request, the following information has been furnished our office.  The City of Austin billed the State of Texas under rates set out in the contract dated March 15, 1935, with the understanding and stipulation that such bills would not affect its claim for adjustment to the electrical rates adopted by the City of Austin on or about August 31, 1959, and such bills have been paid by the State of Texas to the City of Austin with the understanding that such bills and payment

would not affect the claim, if any, of the City of Austin for the difference in the rates under the contract dated March 15, 1935 and the electrical rates adopted by the City of Austin on or about August 31, 1959.

We will answer your questions in the order they are presented in your request.

### Question No. 1.

"Does the State of Texas, under the facts submitted, now have a valid contract with the City of Austin for the supplying of electrical power to the Capitol complex at the rates identified and set forth in the contract dated March 15, 1935?"

Under the terms of the contract attached to your request, the contract was automatically renewed for a one-year period beginning March 17 of each year. Therefore, assuming that the State of Texas and the City of Austin had the power to enter into the contract dated March 15, 1935, and had the power to call for automatic renewals, the State of Texas and the City of Austin would have a valid contract until one of the parties, by written notice, terminated the contract at the end of a one-year period beginning March 17.

In Attorney General's Opinion V-941 (1949), it was held:

"A public utility is usually a monopoly operating under a franchise with the type of service defined and rates controlled. These factors make purchase of public utility services on the basis of competitive bids impracticable. The courts have recognized these conditions and have held that purchases of utility services do not come within the statutes which require 'supplies' to be purchased by competitive bidding."

Therefore, you are advised that the City of Austin and the State of Texas had the power to enter into the contract attached to your request and such contract is a valid contract.

Since the City of Austin accepted the payments for the months of March, 1958, through November, 1959, on rates called for in the contract dated March 15, 1935, it is our opinion

that the State of Texas had a valid contract with the City of Austin for the supplying of electrical power to the Capitol complex at rates identified and set forth in the contract dated March 15, 1935.

Whether the State of Texas has a valid contract after March 16, 1959, depends on whether the City of Austin cancelled the contract pursuant to its provisions.

### Question No. 2.

"If your answer to Question No. 1 is in the affirmative, does the City of Austin have the power to cancel the contract without the approval of the State of Texas through its duly authorized agents?"

The provisions of the contract state:

". . . and the same is hereby renewed and extended in all of its terms and particulars for the period ending March 16, 1937; provided, that unless written notice is given by either party hereto to the other party not less than thirty days before the expiration of this agreement, the said contract shall be continued for another year, and thereafter from year to year until terminated by such written notice served not less than thirty days before the expiration of any one such yearly period."

Therefore, under the terms of the contract, the City of Austin had the power to cancel the contract on March 16, 1961, provided it had given written notice to the State Board of Control of such cancellation at least thirty days prior to March 16, 1961. If the City of Austin has not cancelled the contract pursuant to the above quoted provisions, it is our opinion that the City of Austin does not have the power to now cancel the contract prior to March 16, 1962, without the approval of the State of Texas through its duly authorized agents.

### Question No. 3.

"If your answer to Question No. 1 is in the negative, does the State of Texas have any valid contract with the City of Austin for the supplying of electrical power to the

Capitol complex?  If your answer to this
question is in the affirmative, what are
the rates to be paid for the supplying of
such electric power?"

In the event the City of Austin has cancelled the
contract by giving written notice to the State Board of Con-
trol of its desire to terminate the contract as of March 16,
1961, and assuming that the State of Texas and the City of
Austin have not entered into another agreement, the State of
Texas in that event would not have a valid contract with the
City of Austin, and the rates to be paid in any new contract
entered into would, of course, be subject to negotiations be-
tween the State of Texas and the City of Austin.

### Questions Nos. 4 and 5.

"If your answer to Question No. 3 is in the
affirmative, and the rates to be paid the
City of Austin exceed the amount of the appro-
priation made for such purpose, is the State
Board of Control subject to the penalties pro-
vided for in Section 3 of Article V, House Bill
4, Acts of the 56th Legislature, Third Called
Session, 1959, Chapter 23, page 442?

"If the State of Texas does not now have an
existing valid contract, may the State of Texas
enter into a contract with the City of Austin
calling for rates in excess of the amount appro-
priated for such purpose?"

Section 3 of Article V, House Bill 4, Acts of the 56th
Legislature, Third Called Session, 1959, Chapter 23, page 442,
(General Appropriation Act), provides:

"EXCESS OBLIGATIONS PROHIBITED.  No
department or agency specified in this Act
shall incur an obligation in excess of the
amounts appropriated to it for the respect-
ive objects or purposes named.  In the event
this provision is violated, the State Auditor
shall certify the fact and the amount of the
over-obligation to the Comptroller, and the
Comptroller shall deduct an amount or amounts
equivalent to such over-obligation from the
salary or other compensation due the responsi-
ble disbursing or requisitioning officer or
employee.  This provision is specified pur-

suant to Section 10, Article XVI, of the Constitution of Texas."

Section 3 of Article V specifically prohibits any department from incurring any obligation in excess of the amounts appropriated to the department for the respective objects and purposes made in the appropriation. The State of Texas cannot enter into a valid contract calling for an expenditure in excess of the amount appropriated for that purpose. Nichols v. State, 32 S.W. 452 (1895); Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660 (1935); Austin National Bank v. Sheppard, 123 Tex. 272, 71 S.W.2d 242 (1934); State v. Haldeman, 163 S.W. 1020 (Civ.App. 1913); State v. Steck Company, 236 S.W.2d 866 (Civ.App. 1951, error ref.).

You are, therefore, advised that the State of Texas does not have the authority to enter into a contract with the City of Austin calling for rates in excess of the amount appropriated for such purposes.

In answer to your fourth question, if the Board of Control entered into a contract calling for an obligation in excess of the amount appropriated to it, it would be subject to the penalties provided for in Section 3 of Article V, House Bill 4, Acts of the 56th Legislature, Third Called Session, 1959, Chapter 23.

## SUMMARY

Under the facts submitted, the State of Texas and the City of Austin now have a valid contract for the supplying of electrical power to state buildings in the Capitol complex, and the State Board of Control is not authorized to enter into any agreement with the City of Austin calling for an expenditure in excess of the amount appropriated for such purpose.

Yours very truly,

WILL WILSON
Attorney General of Texas

By John Reeves
John Reeves
Assistant

JR:zt

Mr. Wm. J. Burke, page 8.   (WW-1044)


APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

J. Milton Richardson

William T. Blackburn

John C. Steinberger

REVIEWED FOR THE ATTORNEY GENERAL
BY:   Morgan Nesbitt