# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==================
## NO. 03-05-00311-CV
==================

**Wiegand Hermanos, Perforadores, S.A., Appellant**

**v.**

**City of Lockhart, Appellee**

===================================================================
**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT**
**NO. 03-071B, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**
===================================================================

## M E M O R A N D U M   O P I N I O N

This appeal arises from a lawsuit filed by the City of Lockhart against Wiegand Hermanos, Perforadores, S.A. ("Wiegand"), a Mexican corporation, over the unauthorized subdivision of real property in Caldwell County. Frederick Wiegand, Jr., is the president and sole employee of the company, and lives on the property owned by the company.[1] The company filed a counterclaim for conversion and a constitutional-takings claim for the removal of dirt and rock fill

---

[1] In his deposition, Frederick Wiegand testified that he is also "director and administrator" of the company and receives no salary. He inherited the property from his mother when she died in 1991 and "put it in a Mexican corporation" to "protect it" from the City. All references to "Wiegand" are to the appellant company. References to "Frederick" or "Mr. Wiegand" are to the individual.

when the City installed a wastewater line across Wiegand's property. The district court granted summary judgment in favor of the City as to the takings claim. On appeal, Wiegand contends that the trial court erred in granting the City's motion for summary judgment by concluding that there was not a taking, and in finding no evidence (i) of the intent required for a valid takings claim and (ii) that the taking was for a public use. For the reasons that follow, we affirm the judgment.

## BACKGROUND

The following facts are undisputed. On March 15, 2002, the City and Frederick Wiegand, Jr., on behalf of the company, entered into a contract for a wastewater pipeline easement. The agreement allowed the City to install and maintain a wastewater line across the property. Among other things, the agreement provided that (i) any brush or timber that was cut "must either be stacked at a location along the easement as requested by [Wiegand], or chipped and distributed along the easement, or otherwise disposed," (ii) the City "will allow no trash, debris, or refuse from its operations to exist on the ground," and (iii) after construction of the line, the City "will restore the surface as nearly as practicable to its original condition, so as not to affect normal drainage." The City paid Wiegand $1680 in consideration for the easement. In June and July 2003, the City installed the pipeline, removing the excavated material.

Meanwhile, on April 22, 2003, the City filed its original petition challenging Wiegand's efforts to subdivide the property into various tracts of land for development in violation of the City's municipal code. In its petition, the City sought injunctive relief relating to Wiegand's refusal to allow the City entry to the land to inspect and effect repairs to the City's water lines. Holding the certificate of convenience and necessity for the water supply in the area, the City alleged

2

that it sought to repair the water distribution line and thereby preserve the integrity of its water distribution system. In June, Wiegand filed an answer and thereafter a counter petition, alleging claims for conversion for removing "valuable" property, to wit, the excavated dirt and rocks from the premises, and for nuisance for the operation of a shooting range in the vicinity. In September, Wiegand amended its counter petition to allege a claim for conversion and "the taking of the dirt and gravel" in violation of Article 1, Section 17 of the Texas Constitution. *See* Tex. Const. art. I, § 17. Wiegand complains that the City did not have the right to remove the excavated material from the property.

The City moved for summary judgment on the takings claim. In its motion, the City urged that as a matter of law Wiegand was unable to prove the elements required for it to prevail on its takings theory and that there were no genuine issues of material fact. The takings claim was severed from the original suit prior to the grant of the summary judgment in favor of the City and is the only claim before us on appeal.

**ANALYSIS**

Wiegand claims that the district court erred in granting summary judgment in favor of the City because there was sufficient evidence to create a fact question regarding the intent to take and whether the taking was for a public use. Specifically, Wiegand contends that the contract granting the easement to the City does not give the City ownership rights to the displaced material excavated in the process of installing the pipeline and that therefore the City "took" its property without just compensation. Despite the language of the contract, Wiegand claims that his understanding was that the contractor would leave the fill in mounds on his property for his use.

3

This understanding was based on conversations with a representative of the contractor in June or July 2003 when the City's contractor was digging the ditch for the pipeline. The City responds that the excavated material was removed in compliance with the contract and that no taking occurred.

The City moved for summary judgment pursuant to both Rule 166a(c) and Rule 166a(i). We review the trial court's summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a motion for summary judgment under Rule 166a(c), the movant must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life*, 128 S.W.3d at 215-16; *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Applying familiar standards, we take as true all evidence favorable to the non-movant. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). We resolve any doubts about the existence of a genuine issue of material fact in a light most favorable to the non-movant. *Id.*; *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

Under Rule 166a(i), a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). Unless the respondent produces summary judgment evidence raising a genuine issue of material fact, the court must grant the motion. *Id.*; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).

When the trial court does not specify the basis for its summary judgment, as here, the appealing party must show it is error to base the judgment on any ground asserted in the motion. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). Because the trial court's order does

4

not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life*, 128 S.W.3d at 216.

Any issue relied upon to avoid the movant's entitlement to summary judgment must be expressly presented by written answer or response to the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("the non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement. . . ."). Thus, any issues not expressly presented to the trial court shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c).

Article 1, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. Whether particular facts are enough to constitute a taking is a question of law. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998). In the usual situation, the governmental entity compensates the property owner before taking his property, either by paying a mutually agreed price or by paying the value as determined in a formal condemnation proceeding. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992).

To establish a takings claim, Wiegand had the burden of proving (1) the City intentionally performed certain acts, (2) that resulted in a taking of property, (3) for public use. *See Steele v. City of Houston*, 603 S.W.2d 786, 791-92 (Tex. 1980). In its motion for summary judgment, the City sought to demonstrate its entitlement to summary judgment by negating any

intent to take under eminent domain. The City also challenged each of the elements on which Wiegand had the burden of proof at trial.

The City bases its motion on the easement agreement which provides the City with both the authority and the duty to remove any "trash, debris, or refuse" that remained after the installation of the pipeline on Wiegand's property. Thus, the City contends it was acting within the scope of the agreement and there was no taking. Attached to its motion, the City appended Wiegand's amended counter petition, excerpts of Mr. Wiegand's deposition testimony, the easement agreement, and an affidavit of Vance Rodgers, the City's assistant city manager. In his affidavit, Rodgers averred that, as a representative of the City, he personally entered into the contract with Wiegand on March 15, 2002:

> The agreement provided the City with an easement on Mr. Wiegand's property for the purpose of the installation of waste and sewer lines. In consideration for the conditions set forth in the agreement, the City paid to Wiegand $1,680.

> In June and July of 2003, the City hired a contractor to install a pipeline on Wiegand's property. As a result of the construction, there was excess dirt and gravel on Wiegand's property. The City transported the excess dirt and rock off of Wiegand's property pursuant to the terms of the attached easement. Under the agreement the City was not permitted to allow any refuse to remain on site, other than timber. Moreover, the City was obligated to restore the surface condition of the property to its pre-installation condition. We made sure that the contractor hired by the City knew that any excavated dirt was to be removed from the property so that Wiegand's property was restored to its original condition.

The easement agreement included the following "special terms and conditions" among its provisions:

6

1. Grantee, in constructing the sewer main or pipeline along said easement, will bury said pipeline so that the top of same is at least three (3) feet below the surface of the earth, except that grantee shall have the right to construct and maintain manholes on and to the pipeline above and below the surface of the earth with the permanent easement described in Exhibits "A" and "B."

. . . .

5. Any brush or timber cut by grantee in its operations within the easement must either be stacked at a location along the easement as requested by grantors, or chipped and distributed along the easement, or otherwise disposed. Grantee will allow no trash, debris, or refuse from its operations to exist on the ground.

6. After construction of the said line, grantee will restore the surface as nearly as practicable to its original condition, so as not to affect normal drainage.

One of the no-evidence grounds raised by the City in its motion for summary judgment was that the City acted pursuant to its easement contract and there was no intent to take, only an intent to act within the scope of its contract. On appeal, Wiegand asserts that this is a property rights case and not a breach-of-contract case[2] and that the City did not act in good faith when it took the excavated material. Wiegand's arguments on appeal, however, vary from those presented to the trial court. We shall consider only those issues and grounds Wiegand expressly presented to the trial court.

Wiegand contends that genuine issues of material fact exist concerning "the terms of the contract and the performance required by the City" and "whether the material taken by the City was taken for public use." Wiegand recited that it entered into the easement agreement, was compensated for the easement, and that the agreement was vague and ambiguous as to the removal

---

[2] The state is immune from a suit for money damages based on an alleged breach of contract unless the state has expressly given its consent to be sued. *See, e.g., Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

of the fill and its value. Wiegand does not contend that it did not enter into a contract with the City or that it was not compensated. Nor does Wiegand contend that the City was unlawfully on the property or unauthorized to install the pipeline.

Wiegand urges that, based on the conversation with the foreman at the time of the work, the City was aware that Wiegand claimed ownership of the material. In his deposition, attached to Wiegand's response, Mr. Wiegand testified that he informed a representative of the contractor in June 2003—a year after entering into the contract—that he wanted the material and that it had value, and that the City intentionally removed the material. In his affidavit, Mr. Wiegand averred that in June 2003 the foreman had orders to haul the material off of Wiegand's property and "dump" it across the fence on the City's land and that in July 2003, Mr. Wiegand measured and determined the value of the "mounds of caliche dirt" produced by the pipeline installation.

Wiegand also claims that the terms of the contract are vague and ambiguous. Whether a contract is ambiguous is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If the contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous. *Id.* Determining whether a provision is ambiguous requires that we examine the entire contract in light of the circumstances that existed when the parties formed the contract. *Id.; State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998). When a contract is unambiguous, we must defer to the language of the contract, not a party's interpretation of that language. *Allodial Ltd. P'ship v. North Tex. Tollway Auth.*, 176 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied).

8

In construing the contract as a whole, we find that it is not ambiguous and that the City was required to remove the excavated material in accordance with the terms of the contract.[3] The contract required the City to remove any "trash, debris, or refuse" derived from its operation and to restore the surface of the property to its original condition so as to have no impact on drainage. Moreover, the contract distinguished the treatment of the excavated material from brush or timber. With regard to any brush or timber that was cut, Wiegand expressly reserved the right to compel the City "as requested" to stack, chip, or dispose of it. Wiegand also reserved all rights to the development of "oil, gas and other minerals" on the property.

By entering into the contract and receiving compensation pursuant to the contract, Wiegand consented to the State's acting according to the contract. In a contractual context, the State does not have the requisite intent under constitutional-takings jurisprudence when it acts within the procedures outlined in the contract. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598-99 (Tex. 2001). "Rather the State is acting within a color of right under the contract and not under its eminent domain powers." *Id*. at 599. As this Court explained in *State v. Steck Co.*:

> It is clear that the stamps were delivered to the State, and its possession of them was by virtue of the contract and not by virtue of a taking within the meaning of Art. I, Sec. 17. Appellee by making the contract, manufacturing the stamps and delivering them to the State did so voluntarily and with its own consent, and can not now say the stamps were taken under the power of eminent domain.

---

[3] Indeed, it is more likely to implicate constitutional-takings jurisprudence for the City to fail to remove the debris: "[w]hen the government causes matter or debris, such as earth, sewage, or water, to cover a portion of private property, or when such material somehow interferes with activities or potential activities on the land, it may constitute a constructive taking that requires compensation." 2A Julius L. Sackman, Nichols on Eminent Domain § 6.01[14][c] at 6-54 (3d ed. 2005).

9

236 S.W.2d 866, 869 (Tex. Civ. App.—Austin 1951, writ ref'd) (citations omitted); *see also Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct. Cl. 1978) ("The concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract."); *J.D. Hedin Constr. Co. v. United States*, 456 F.2d 1315, 1329 (Ct. Cl. 1972) (same). Where the State does not have the intent to take under its eminent domain powers, but only has an intent to act within the scope of the contract, it is not a taking. *Green Int'l v. State*, 877 S.W.2d 428, 434 (Tex. App.—Austin 1994, writ dism'd by agr.).

Because the City was acting under colorable contractual rights, it did not have the requisite intent to take Wiegand's property under any eminent domain powers. *See Little-Tex*, 39 S.W.3d at 599; *Green Int'l*, 877 S.W.2d at 434-35. The City was not exercising its power of eminent domain, but was exercising its contractual rights. The City met its summary judgment burden on the defense to Wiegand's takings claim. Accordingly, Wiegand's constitutional takings claim must fail.

Wiegand argues that, should this Court find that there is a contract or agreement between the parties, there is a disputed fact issue concerning the City's good faith. Even assuming that there is a question about the City's intent to act within the scope of its contract, this issue was not raised before the trial court and, further, Wiegand failed to adduce a scintilla of evidence so as to raise a question of material fact in response to the City's motion. Although Wiegand produced Mr. Wiegand's affidavit along with excerpts of his testimony, it failed to adduce or point to evidence regarding any of the terms or the performance of the contract. The only evidence adduced regarding the contract was a conversation Mr. Wiegand had with the foreman for the contractor over a year

after the execution of the contract.  In sum, Wiegand presented no evidence to raise a material fact question as to the scope of the contract or the City's intent.

## CONCLUSION

We overrule Wiegand's issues and affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed:  May 19, 2006